James PASCUITI, Joseph Reilly,
Walter Rynakso, and Theresa
Murphy, Plaintiffs,

v.

NEW YORK YANKEES, Defendant.

United States of America,
Plaintiff–Intervenor,

v.

New York City, New York City Depart-
ment of Parks and Recreation, and
New York Yankees, Defendants.

No. 98 Civ. 8186(SAS).

United States District Court,
S.D. New York.

Dec. 8, 1999.

---

Glenn Colton, Robert Sadowski, Sara Shudofksy, United States Attorney for the Southern District of New York, New York City, for U.S.

Edward Kopelson, Kopelson & Westreich, Morristown, NJ, for James Pascuiti, Joseph Reilly, Walter Rynasko, and Theresa Murphy.

Richard M. Goldstein, Christopher J. Collins, Lauren Joey Silberfein, Proskauer Rose LLP, New York City, for New York Yankees.

Eric Proshansky, Gail Rubin, Corporation Counsel for City of New York, New York City, for New York City and New York City Department of Parks and Recreation.

## MEMORANDUM OPINION

SCHEINDLIN, District Judge.

Plaintiffs James Pascuiti, Joseph Reilly, Walter Rynasko, and Theresa Murphy and plaintiff-intervenor United States of America (collectively the "plaintiffs") have filed suit against New York City and the New York City Department of Parks and Recreation (the "City"), as well as the New York Yankees (the "Yankees"), alleging that the City and the Yankees have violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq., New York State Executive Law § 296(2), and New York Human Rights Law § 8–107(4) by failing to make Yankee Stadium (the "Stadium") accessible to individuals with disabilities. On December 2, 1999, this Court made oral rulings in response to several issues raised by the parties. Those rulings are withdrawn and replaced by this amended opinion, which clarifies those rulings and provides additional guidance to the parties.

### I. Issues Relating to Title II

The anti-discrimination provision of Title II of the ADA states:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. Title II defines "public entity" to include state and local governments, such as the City. *See* 42 U.S.C. § 12131(1)(A).[1] The regulations implementing Title II explain the responsibilities of public entities in greater detail:

> A public entity shall operate each service, program, or activity so that the

---

1. The City has moved for summary judgment, arguing that it is not liable under Title II for any ADA violations because only the Yankees are responsible for ADA compliance at the Stadium. That motion remains pending before the Court. For purposes of this opinion, the Court assumes that both the City and the Yankees are responsible for ADA compliance at the Stadium.

service, program, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities.

28 C.F.R. § 35.150(a). The regulations contain several limitations, one of which provides that § 35.150(a) does not:

[r]equire a public entity to take any action that it can demonstrate would result in a fundamental alteration in the nature of a service, program, or activity or in undue financial and administrative burdens.

28 C.F.R. § 35.150(a)(3).

### a) Burden of proof

▇▇▇▇ Both the plaintiffs and the City agree that the burden of proof scheme laid out in *Borkowski v. Valley Central School District,* 63 F.3d 131, 137–40 (2d Cir.1995), applies in this case. *Borkowski* involved the allocation of the burdens of proving both "reasonable accommodation" and "undue hardship" under section 504 of the Rehabilitation Act:

It is enough for the plaintiff to suggest the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits. Once the plaintiff has done this, she has made out a prima facie showing that a reasonable accommodation is available, and the risk of nonpersuasion falls on the defendant. At this point the defendant's burden of persuading the factfinder that the plaintiff's proposed accommodation is unreasonable merges, in effect, with its burden of showing, as an affirmative defense, that the proposed accommodation would cause it to suffer an undue hardship. For in practice meeting the burden of nonpersuasion on the reasonableness of the accommodation and demonstrating that the accommodation imposes an undue hardship amount to the same thing.

*Id.* at 138 (citations omitted). Translating this scheme into the Title II context, plaintiffs must: (1) prove that the Stadium, when viewed in its entirety, is not readily accessible to and usable by individuals with disabilities; and (2) suggest a plausible method of making the Stadium readily accessible, the costs of which, facially, do not clearly exceed its benefits. If plaintiffs make out this prima facie case, the City must prove that the proposed method of making the Stadium readily accessible would result in undue financial and administrative burdens.[2]

### b) "When viewed in its entirety"

The City argues that because the regulations state that the service, program, or activity must be readily accessible "when viewed in its entirety," the Court must look at the accessibility of the Stadium as a whole, not at individual elements. The City is correct. The regulations make clear that § 35.150(a) does not "[n]ecessarily require a public entity to make each of its existing facilities accessible to and usable by individuals with disabilities." 28 C.F.R. § 35.150(a)(1). The regulations define "facility" as "all or any portion of buildings, structures, sites, complexes, equipment, rolling stock or other conveyances, roads, walks, passageways, parking lots, or other real or personal property, including the site where the building, property, structure, or equipment is located." 28 C.F.R. § 35.104. Thus, the City is not required to make each portion of the Stadium readily accessible; the issue is whether the Stadium, when viewed in its entirety, is readily accessible. This is known as the "program access" requirement. *See* Preamble to Regulation on Nondiscrimination on the Basis of Disability in State and Local Government Services (the "Title II Preamble"), 28 C.F.R. Pt. 35, App. A, at 492 (explaining program access requirement).

**2.** This expands upon the Court's statement on December 2 that "[t]he parties apparently agree that it is the plaintiff's [sic] burden to show that the facility is not readily accessible

when viewed in its entirety and to suggest reasonable accommodations which would make it so." Transcript of December 2, 1999 Conference ("Tr.") at 4–5.

The City suggests that, given the program access requirement, plaintiffs must do more than "simply demonstrate the absence of wheelchair seating in one or another discrete locations within the Stadium." The City is correct, to a point. While proving that particular barriers exist might not be sufficient to establish Title II liability, each barrier is a building block for a finding that the Stadium, viewed in its entirety, is not readily accessible. Thus, plaintiffs may demonstrate accessibility barriers in discrete locations as part of their effort to sustain their burden of proof. In addition, the Title II Technical Assistance Manual ("Title II TAM"), prepared by the Department of Justice, makes clear that, even under the program access requirement, accessibility is broadly defined:

> When a city holds a public meeting in an existing building, it must provide ready access to, and use of, the meeting facilities to individuals with disabilities. The city is not required to make all areas in the building accessible, as long as the meeting room is accessible. Accessible telephones and bathrooms should also be provided where these services are available for use of meeting attendees.

Title II TAM, at II–5.1000. *See Innovative Health Systems, Inc. v. City of White Plains,* 117 F.3d 37, 45 n. 8 (2d Cir.1997) ("[T]he Department of Justice's manual is given substantial deference unless another reading is compelled by the regulation's plain language.") (citation omitted). Thus, an important part of the program access requirement for the Stadium is whether all services available for the use of non-disabled patrons also are available for use of disabled patrons.[3]

#### c) "Undue burden"

■ Plaintiffs and the City dispute whether the "undue burden" analysis should include the City's overall budget; both argue that it should include the Parks

Department's overall budget. Neither the statute nor the regulations provide any guidance as to the scope of the "undue burden" analysis, but two other sources indicate that the relevant budget of the public entity under Title II is the budget for the service, program, or activity at issue. *See* Title II Preamble, 28 C.F.R. Pt. 35, App. A, at 492 ("In determining whether financial and administrative burdens are undue, all public entity resources available for use in the funding and operation of the service, program, or activity should be considered."); Title II TAM, at § II–5.1000 ("The determination that undue burdens would result must be based on all resources available for use in the program."). Thus, this Court will not consider the City's overall budget as part of its "undue burden" analysis. *See Borkowski,* 63 F.3d at 139 ("Congress could not have intended the only limit on the employer's duty to make reasonable accommodation to be the full extent of the tax base on which the government entity could draw.").

Both plaintiffs and the City urge the Court to consider the overall budget of the City's Parks Department as part of the "undue burden" analysis. In *Olmstead v. Zirming,* 527 U.S. 581, 119 S.Ct. 2176, 144 L.Ed.2d 540 (1999), a case cited by both parties, the Supreme Court discussed whether Georgia was required to place persons with mental disabilities in community settings (rather than in institutions) as part of a public entity's obligation to make "reasonable modifications" in its policies, practices, and procedures under Title II of the ADA and 28 C.F.R. § 35.130(b)(7). The Court explained that the "reasonable modification" requirement allowed public entities to resist modifications that would "fundamentally alter" the nature of the service, program, or activity, and that part of the fundamental-alteration component was a cost-based defense. *Id.* at 2188.

---

**3.** Again, this expands on the Court's December 2 statement that "the City is correct in that it is not required to make every portion of Yankee Stadium accessible as long as its programs are readily accessible on the whole." Tr. at 6.

Even though the program at issue in *Olmstead* was the placement of persons with mental disabilities in either community settings or institutions, the Court looked at the state's overall mental health budget, directing the lower court, when analyzing the cost-based defense on remand, to "tak[e] into account the resources available to the State and the needs of others with mental disabilities." *Olmstead,* 527 U.S. at —————, 119 S.Ct. at 2188–90. Similarly, even though the program at issue in this case is the Stadium, this Court will consider the overall Parks Department budget.

The *Olmstead* Court noted, however, that simply comparing a proposed modification with the state's overall mental health budget "would leave the State virtually defenseless once it is shown that the plaintiff is qualified for the service or program she seeks." *Olmstead,* 527 U.S. at ———, 119 S.Ct. at 2188. The Court urged lower courts to adopt a broader perspective:

> Sensibly construed, the fundamental-alteration component of the reasonable-modifications regulation would allow the State to show that, in the allocation of available resources, immediate relief for the plaintiffs would be inequitable, given the responsibility the State has undertaken for the care and treatment of a large and diverse population of persons with mental disabilities.

*Olmstead,* 527 U.S. at ———, 119 S.Ct. at 2189. By considering the overall Parks Department budget, this Court adopts a similarly broad perspective for the "undue burden" analysis in this case. The Court can obtain a realistic picture of the resources available to the City for proposed modifications, while balancing the cost of those modifications against potential harms to other Parks Department programs.[4]

### d) Possibility of non-structural alternatives

Plaintiffs suggest that "[n]on-structural alternatives do not provide an equal opportunity to see live professional baseball and thus are simply not available alternatives to the removal of structural barriers to accessibility at the Stadium." While plaintiffs may prevail on this issue at trial, the Court cannot resolve it at this stage. The Court simply notes that § 35.150(b)(1) states that "[a] public entity is not required to make structural changes in existing facilities where other methods are effective in achieving compliance with this section." 28 C.F.R. § 35.150(b)(1). At trial, if plaintiffs make out a prima facie case that the Stadium is not readily accessible, the City can attempt to demonstrate that it can achieve compliance through methods other than structural changes.[5]

## II. Use of Standards for New Construction and Alterations

In its initial letter to the City and the Yankees detailing alleged violations of the ADA at the Stadium, the Department of Justice stated:

> Under the ADA, existing facilities are obligated to bring their facilities as close to compliance with the Standards as is readily achievable. Therefore, we consider any element in a facility that does not meet or exceed the requirements set forth in the Standards to be a barrier to access.

Letter from Assistant U.S. Attorney Robert W. Sadowski to John C. Lawn, Vice President and Chief of Operations for the Yankees, and Marjorie A. Cadogan, General Counsel for the City's Parks Depart-

---

4. The Court will not consider "the cost of making similar changes at all of the City's stadiums at which public programs are held," as suggested by the City, because plaintiffs do not seek changes to any other City facilities in this lawsuit.

5. This expands upon the Court's statement on December 2 that "[t]he City is also correct that a public entity is not required to make structural changes in existing facilities where other methods are effective." Tr. at 6.

ment (April 8, 1998), at 3. The "Standards" mentioned in the letter are the "Standards for Accessible Design" laid out in the regulations. *See* 28 C.F.R. Pt. 36, App. A.[6]

In order to establish that the City violated the ADA, one of the elements the plaintiffs must prove is that the Stadium, when viewed in its entirety, is not readily accessible to and usable by individuals with disabilities. In order to establish that the Yankees violated the ADA, one of the elements the plaintiffs must prove is the existence of architectural barriers to access by individuals with disabilities. Both the City and the Yankees argue that plaintiffs cannot satisfy these burdens simply by demonstrating that the Stadium does not comply with the Standards.

■ The City and the Yankees note that the regulations make clear that only new construction and altered portions of existing facilities must comply with the Standards. *See* 28 C.F.R. § 35.151(c) (Title II); 28 C.F.R. § 36.406(a) (Title III). In addition, they emphasize that the ADA created a lower standard of compliance for existing facilities than for new construction and alterations. *See* Title II Preamble, Pt. 35, App. A, at 492 (explaining that the program access requirement, which is lower than the Standards, continues to apply to existing facilities); Preamble to Regulation on Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities ("Title III Preamble"), Pt. 36, App. B, at 645 ("In striking a balance between guaranteeing access to individuals with disabilities and recognizing the legitimate cost concerns of businesses and other private entities, the ADA establishes different standards for existing facilities and new construction."). Given this lower standard, they argue, plaintiffs cannot use the Standards as the baseline for demonstrating the existence of architectural barriers at the Stadium.

The problem with this argument is that even though only new construction and alterations must comply with the Standards, those Standards nevertheless provide valuable guidance for determining whether an existing facility contains architectural barriers. *See* Standards, at 1, *reprinted in* 28 C.F.R. Pt. 36, App. A, at 527 ("This document sets guidelines for accessibility to places of public accommodation and commercial facilities by individuals with disabilities."). Thus, plaintiffs are allowed to compare facilities at the Stadium with the requirements laid out in the Standards as part of their effort to establish individual barriers to access.

Allowing plaintiffs to use the Standards in this manner does not alter the ADA's lesser requirements for existing facilities. In order to establish that the Yankees have violated the ADA, plaintiffs still must proffer evidence that removal of a given barrier is readily achievable. It is the "readily achievable" requirement, defined as "easily accomplishable and able to be carried out without much difficulty or expense," 42 U.S.C. § 12181(9), that provides the lesser standard for existing facilities under Title III. In order to establish that the City has violated the ADA, plaintiffs still would have to: (1) prove that the Stadium, viewed in its entirety, is not readily accessible to and usable by individuals with disabilities; and (2) suggest a plausible method of making the Stadium readily accessible, the costs of which, facially, do not clearly exceed its benefits. The program access requirement, which mandates that the Stadium be viewed in its entirety, provides the lesser standard for existing facilities under Title II. Allowing plaintiffs to use the Standards as part of their effort to establish the existence of individual barriers to access does not dilute either of those requirements.[7]

---

6. The Standards are entitled "ADA Accessibility Guidelines for Buildings and Facilities" and sometimes are referred to as "ADAAG." *See* 28 C.F.R. Pt. 36, App. A.

7. This expands upon the Court's statement on

December 2 that "it is not sufficient for the plaintiffs to demonstrate that the Stadium is not in compliance with the ADA accessibility guidelines which only apply to new constructions [sic] and alterations." Tr. at 5.