**Andrew D. LEVY, Plaintiff,**

**v.**

**C.D. (Dan) MOTE, Jr.,
et al., Defendants.**

**No. H–99–3072.**

United States District Court,
D. Maryland.

July 11, 2000.

C. Christopher Brown, Brown, Goldstein & Levy, Baltimore, MD, for plaintiff.

Dawna M. Cobb, Assist. Atty. Gen., Baltimore, MD, for defendants.

## MEMORANDUM OPINION

ALEXANDER HARVEY, II, Senior District Judge.

Andrew D. Levy, Esq. ("Levy") is an experienced member of the Bar of this Court who appears here regularly both as counsel and as a plaintiff.[1] Levy has specialized in representing clients in suits brought in this Court under the Americans With Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.* (the "ADA"). He has also been a plaintiff in a number of civil actions filed in this Court seeking relief under the ADA.[2] Levy himself is disabled and has limited use of his legs. He must use a wheelchair for mobility and has appeared without difficulty before judges of this Court at conferences, hearings and trials.

In this particular action, Levy, represented by one of his partners in the law firm of Brown, Goldstein & Levy, is himself a plaintiff. He has alleged that on an occasion in October of 1999 he was, because of his disability, unable to attend a meeting of attorneys scheduled at a facility

---

1. Levy is a graduate of the University of Maryland School of Law and is also an adjunct professor there.

2. Levy has, *inter alia*, represented plaintiffs in the following actions brought in this Court under the ADA: *Haffner v. Bell,* Civil No. AMD–96–2337; *Baltimore Neighborhoods, Inc. v. Rommel Builders, Inc.,* 3 F.Supp.2d 661 (D.Md.1998); *Small v. Dellis,* 1997 WL 853515 (D.Md.1997), *aff'd* 211 F.3d 1265 (4th Cir.2000); *Potomac Group Home Corp. v. Montgomery County, Maryland,* 823 F.Supp. 1285 (D.Md.1993). In addition, he has, *inter alia,* himself been a plaintiff in the following ADA actions filed in this Court: *Levy v. Mangione,* Civil No. B–92–3591; *Levy v. Lowes Baltimore Cinemas, Inc.,* Civil No. MJG–93–2349; *Levy v. Twenty South Charles Street Corp.,* Civil No. WMN–94–522; and *Levy v. Beery,* Civil No. Y–94–256.

owned by the University of Maryland (the "University") and located on its College Park campus.

Suit has been filed under the ADA and under the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq.* (the "Rehabilitation Act") against defendants C.D. Mote, Jr., Nathan Chapman, Jr., Lawrence Gordon and Christopher Cantore[3] in their official capacities. Plaintiff alleges that on October 6, 1999, he was wrongfully denied access to The Rossborough Inn (the "Inn"), a facility owned and operated by the University and located on its College Park campus.

# I

## *Procedural History*

Levy instituted this action on October 12, 1999, and defendants promptly filed a motion to dismiss. On February 8, 2000, Levy moved for leave to file an amended complaint. The Court granted Levy such leave and denied as moot the University's motion to dismiss the original complaint. An amended complaint was then filed by plaintiff.

On February 25, 2000, defendants filed a motion to dismiss plaintiff's amended complaint, relying in part on several affidavits. Responding to that motion, plaintiff requested that he be permitted to undertake discovery relating to the facts relied upon by defendants in support of their motion. On April 6, 2000, a status conference was held in chambers, and the Court granted plaintiff leave to conduct additional discovery. A new briefing schedule was set. Thereafter, on May 19, 2000, plaintiff filed a motion for partial summary judgment.

Presently pending before the Court are defendants' motion to dismiss plaintiff's amended complaint and plaintiff's motion for partial summary judgment. Extensive memoranda and numerous affidavits in support of and in opposition to these motions have been filed by the parties. Included among the briefs reviewed by the Court are the following: defendants' memorandum in support of their original motion to dismiss (Paper No. 4), plaintiff's memorandum in opposition to defendants' original motion to dismiss (Paper No. 6), defendants' reply to that opposition of plaintiff (Paper No. 9), defendants' memorandum in support of their motion to dismiss plaintiff's amended complaint (Paper No. 15), plaintiff's opposition to defendants' motion to dismiss the amended complaint (Paper No. 16), defendants' amended reply to that opposition of plaintiff (Paper No. 19), plaintiff's supplemental memorandum in opposition to defendants' motion to dismiss the amended complaint (Paper No. 20), plaintiff's memorandum in support of his motion for partial summary judgment (Paper No. 21), defendants' reply to plaintiff's supplemental memorandum in opposition to their motion to dismiss the amended complaint (Paper No. 22), and defendants' memorandum in opposition to plaintiff's motion for partial summary judgment (Paper No. 23).

Following its review of the parties' numerous memoranda and the affidavits and exhibits which have been submitted, this Court has concluded that no hearing is necessary for a decision on the pending motions. *See* Local Rule 105.6. For the reasons to be stated herein, defendants' motion to dismiss the amended complaint, treated herein as a motion for summary judgment, will be granted, and plaintiff's motion for partial summary judgment will be denied.

# II

---

**3.** Defendant C.D. Mote, Jr. is President of the University of Maryland. Defendant Nathan Chapman, Jr. is Chairman of the University System of Maryland Board of Regents. Defendant Lawrence Gordon is President of the University Club's Board of Governors which operates The Rossborough Inn, and defendant Christopher Cantore is the Manager of the University Club which is located in The Rossborough Inn.

### Facts [4] and Claims

Plaintiff Levy has limited use of his legs as a result of a central nervous system infection, and he must use a wheelchair for mobility. On October 6, 1999, Levy traveled to the University's College Park campus to attend a scheduled meeting of the Criminal Law and Practice Section of the Maryland State Bar Association (the "Bar Association"). Levy is an *ex officio* member of that Section, having formerly been its Chairperson. The meeting was held in facilities of the University of Maryland Faculty/Staff Club (the "University Club" or the "Club"), located in the Inn. The Bar Association had rented the Club's facilities for the purposes of this meeting. Although Attorney Bob Dean ("Dean"), the Bar Association member responsible for arranging the meeting at the Inn, had been informed by the University that the Inn was not wheelchair accessible, Dean nevertheless rented the Club's facilities in the Inn.

Upon arriving at the Inn, Levy noted that there was no appropriate parking space with an accessible path of travel to the Inn. After parking and making his way to the Inn by wheelchair, Levy was unable to find an accessible entrance into the building, namely one that did not require going up several steps to enter the facility. Levy was informed by an official working at the Inn that there was no accessible entrance. As a result of the lack of an accessible entrance, Levy was unable to attend the Bar Association meeting. He promptly returned to his car and drove home.

Count I of the amended complaint alleges that the University's failure to have an accessible entrance to the Inn denied Levy the benefits of the facilities, services, programs, and activities of the University, allegedly in violation of Title II of the ADA. In Count I, Levy requests declarato-

ry and injunctive relief and compensatory and punitive damages. Count II contains allegations and requests for relief identical to those contained in Count I except that it is premised upon an alleged violation of Section 504 of the Rehabilitation Act.

After this suit was filed, Levy and his wife applied for membership in the University Club, which accepts as members faculty, staff, alumni, and other individuals with ties to the University. The University Club's facilities are located at the Inn, where it has a special members-only room and where it provides a fifteen percent discount to Club members on all food purchased at the Inn. Levy and his wife have now been accepted as members of the Club.

During the pendency of this suit, the University has made attempts to renovate the Inn in order to make it compliant with the ADA. The University installed what it believed to be an accessible restroom on January 31, 2000. A temporary portable wheelchair ramp is also now in place at the Inn which is available for use as needed. Wheelchair users have therefore been afforded access to the Inn until a permanent ramp is installed. The necessary work on a permanent ramp has been scheduled to commence on or about July 28, 2000. In their pending motion to dismiss the amended complaint, defendants have contended that since facilities and services of the Inn are no longer inaccessible, plaintiff Levy lacks standing to sue for injunctive relief. Defendants further maintain that when viewed in its entirety, the University's rental of its facilities to outside entities was not under provisions of the ADA inaccessible to disabled persons.

At the status conference held in this case, the Court permitted plaintiff to undertake an inspection of defendants' renovations of the Inn to determine whether, as contended by defendants, the Inn had

---

4. As they concern the defendants' motion, the facts and all reasonable inferences drawn therefrom will be viewed in the light most favorable to plaintiff Levy as the party opposing that motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364 (4th Cir. 1985).

been made ADA compliant. Levy thereupon retained Robert Ardinger ("Ardinger"), an ADA consultant, to review the Inn's renovations and to prepare a report concerning whether the renovations in question had brought the Inn into ADA compliance.

In Ardinger's report, he determined that all the renovations made by the University did not make the Inn fully compliant with the ADA and its implementing regulations. Various alleged deficiencies were noted, and Ardinger made a number of suggestions to University officials concerning the steps which they might take to remedy these deficiencies. He did, however, conclude that the proposed permanent ramp to be later installed at the Inn would meet or exceed all of the accessibility requirements of the ADA.

Responding to Ardinger's report, defendants have implemented, or are in the process of implementing, many of the remedial measures suggested by Ardinger in his report. The University has repaved the curb area next to the disabled parking spaces and has lowered to the proper height the mirror and towel dispenser in the accessible bathroom at the Inn. The University has also re-striped the disabled parking spaces, making the spaces van accessible. The Inn is presently in the process of purchasing attachable levers for use on the interior antique doorknobs at the Inn and is revising its rental application forms to include a question about the need of renters and their guests for accommodations for disabled persons.

Staff of the Inn are continuing their practice of making oral inquiries to prospective guests concerning their need for accommodations. However, because of the substantial cost of building another temporary wheelchair ramp between now and July 28, 2000, the date when construction of a permanent compliant ramp is to commence, the Inn continues to rely on its current temporary ramp for use by disabled persons when needed for their safe entrance. Staff of the Inn continue to provide assistance to anyone wishing to use the temporary ramp.

## III

### Summary Judgment Principles

In support of their motion to dismiss the amended complaint, defendants have relied on affidavits and other exhibits. The Court will accordingly treat this motion as one for summary judgment and dispose of it pursuant to the provisions of Rule 56, F.R.Civ.P. *See* Rule 12(b), F.R.Civ.P.

A defendant moving for summary judgment bears the burden of showing the absence of any genuine issue of material fact and that it is entitled to judgment as a matter of law. *Barwick v. Celotex Corp.,* 736 F.2d 946, 958 (4th Cir.1984). Where, as here, the nonmoving party will bear the ultimate burden of persuasion at trial, "the burden on the moving party [at the summary judgment stage] may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

One of the purposes of Rule 56 of the Federal Rules of Civil Procedure is to require a plaintiff, in advance of trial and after a motion for summary judgment has been filed and properly supported, to come forward with some minimal facts to show that the defendant may be liable under the claims alleged. *See* F.R.Civ.P. 56(e). If the nonmoving party "fail[s] to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," then "the plain language of Rule 56(c) mandates the entry of summary judgment." *Catrett,* 477 U.S. at 323, 106 S.Ct. 2548.

While the facts and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the party opposing the motion, *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364

(4th Cir.1985), "when the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). " 'A mere scintilla of evidence is not enough to create a fact issue; there must be evidence on which a jury might rely.' " *Barwick*, 736 F.2d at 958–59 (quoting *Seago v. North Carolina Theatres, Inc.*, 42 F.R.D. 627, 640 (E.D.N.C. 1966), *aff'd*, 388 F.2d 987 (4th Cir.1967), *cert. denied*, 390 U.S. 959, 88 S.Ct. 1039, 19 L.Ed.2d 1153 (1968)). Moreover, only disputed issues of *material* fact, determined by reference to the applicable substantive law, will preclude the entry of summary judgment. "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In the absence of the necessary minimal showing by a plaintiff that the defendant may be liable under the claims alleged, a defendant should not be required to undergo the considerable expense of preparing for and participating in a trial. *See Catrett*, 477 U.S. at 323–24, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 256–57, 106 S.Ct. 2505. Indeed, the Fourth Circuit has stated that, with regard to motions for summary judgment, the district courts have "an affirmative obligation ... to prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir.1987) (quoting *Catrett*, 477 U.S. at 323–24, 106 S.Ct. 2548).

Applying these principles to the facts of record here, this Court has concluded that defendant's motion to dismiss, treated herein as a motion for summary judgment, must be granted and that plaintiff's motion for partial summary judgment must be denied.

## IV

### Other Applicable Principles of Law

The ADA and the Rehabilitation Act are generally construed to impose the same requirements due to the similarity of the language of the two acts. *Rogers v. Dept. of Health, Envtl. Control*, 174 F.3d 431, 433–34 (4th Cir.1999). Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.[5] "Public entity" is defined as "any department, agency ... or other instrumentality of a State." 42 U.S.C. § 12131(1)(B). Although Title II of the ADA does not define the phrase "services, programs, or activities," courts have held that the phrase "encompasses virtually everything that a public entity does." *Johnson v. City of Saline*, 151 F.3d 564, 569 (6th Cir.1998); *Matthews v. Jefferson*, 29 F.Supp.2d 525, 532 (W.D.Ark.1998). The Sixth Circuit in *Johnson* held that a public entity, leasing or renting out its facilities to non-public entities, is subject to Title II of the ADA because it is considered to be a landlord. *Johnson*, 151 F.3d at 571–72.

Regulations implementing Title II explain the responsibilities of public entities in greater detail:

A public entity shall operate each service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities.

*See* 28 C.F.R. § 35.150(a).

The regulations make clear that § 35.150(a) does not "[n]ecessarily require a public entity to make each of its existing facilities accessible to and usable by individuals with disabilities." 28 C.F.R. § 35.150(a)(1). Rather, the issue is wheth-

---

**5.** The language of § 504 of the Rehabilitation Act, 29 U.S.C. § 794(a) is very similar.

er the service, program, or activity operated or owned by the public entity, "when viewed in its entirety," is readily accessible. *Pascuiti v. New York Yankees, et al.*, 87 F.Supp.2d 221, 223 (S.D.N.Y.1999).

In order to establish disability discrimination under Title II of the ADA, a plaintiff must prove: (1) that he has a disability; (2) that he is otherwise qualified for the benefit in question; and (3) that he was excluded from the benefit due to discrimination solely on the basis of the disability. *Doe v. University of Maryland Med. Sys. Corp.*, 50 F.3d 1261, 1265 (4th Cir.1995).

Article III of the United States Constitution limits the judicial power of the federal courts to resolving actual cases and controversies. *Finlator v. Powers*, 902 F.2d 1158, 1160 (4th Cir.1990). A case or controversy is justiciable if it involves "issues that are precisely framed by their connection to specific litigants in a concrete context." *Gilles v. Torgersen*, 71 F.3d 497, 500 (4th Cir.1995). In the context of an ADA action, liability may not be found in a vacuum. *Long v. Coast Resorts, Inc.*, 32 F.Supp.2d 1203, 1210 (D.Nev. 1998). The mere violation of the ADA does not alone establish injury. *Id.* A plaintiff is obligated to show, by competent evidence, that a defendant's violation of the ADA caused him actual injury before such plaintiff can recover. *Id.*

To establish standing for injunctive relief, a plaintiff must first demonstrate that "he will suffer an injury in fact which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Proctor v. Prince George's Hosp. Ctr.*, 32 F.Supp.2d 830, 832 (D.Md.1998). To establish standing, a plaintiff must demonstrate that the conduct complained of will cause the injury alleged and that it is likely, not speculative, and that the injury will be prevented by a favorable decision. *Id.* at 832, n. 2. In ADA cases, courts have held that a plaintiff does not have standing to obtain injunctive relief if he cannot demonstrate a likelihood that he will suffer future discrimination at the hands of the defendant. *Id.* at 832.

An injunction is an equitable remedy. *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 311, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982). The decision to grant or deny an injunction lies within the sound discretion of the district judge, whose judgment will not be disturbed absent an abuse of that discretion. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley*, 756 F.2d 1048, 1055 (4th Cir.1985). Where a plaintiff and a defendant present competing claims of injury, the traditional function of equity has been to arrive at a "nice adjustment and reconciliation" between the competing claims. *Weinberger*, 456 U.S. at 312, 102 S.Ct. 1798. In such cases, the court "balances the conveniences of the parties and possible injuries to them according as they may be affected by the granting or withholding of the injunction." *Id.*

Under appropriate circumstances, a court may justifiably withhold injunctive relief altogether even though the law has been violated by the party sought to be enjoined. *Weinberger*, 456 U.S. at 313, 320, 102 S.Ct. 1798; *Prows v. Fed. Bureau of Prisons*, 981 F.2d 466, 468 (10th Cir. 1992); *Woerner v. United States Small Bus. Admin.*, 934 F.2d 1277, 1279–80 (D.C.Cir.1991). "[T]he award of an ... injunction by courts of equity has never been regarded as strictly a matter of right, even though irreparable injury may otherwise result to the plaintiff." *Yakus v. United States*, 321 U.S. 414, 440, 64 S.Ct. 660, 88 L.Ed. 834 (1944).

## V

### *Discussion*

The Court can well appreciate that, as a result of his own personal disability, plaintiff Levy is a passionate advocate of the laudable principles of the ADA. In actions filed in this Court, he has in the past

successfully undertaken to apply these principles to both public and private facilities which appear to ignore the requirements of the law. Nevertheless, the facts of record in this particular case indicate that the ADA claims asserted here by plaintiff Levy are hardly of major, justiciable proportions.

Boiled down to its essentials, the primary injury alleged in this case initially arose because a Baltimore attorney was unable to attend a meeting of a Bar Association committee when, because of his disability, he could not gain access to one of the many facilities maintained by a public entity. Thwarted in his desire to attend the meeting, plaintiff turned around and drove home. When defendants' original motion to dismiss the complaint questioned whether plaintiff had standing to seek injunctive relief in his suit, plaintiff, to buttress his case, applied for membership in the University Club which uses the facilities of the place where the Bar Association committee meeting was held. As a result of his membership in that Club, plaintiff in his amended complaint asserts that he will be injured in the future because the Inn is not fully ADA compliant.

### (a)

#### *Injunctive Relief*

On the record here, this Court has concluded that plaintiff Levy is not entitled to a declaratory judgment or to the entry of an injunction against defendants. His suit has been successful in large part. It has resulted in substantial remedial efforts undertaken by the University to make the Inn fully compliant with the ADA.[6] Many of the suggestions of plaintiff's expert Ardinger have been carried out, and other necessary construction will be undertaken in the very near future.

■ Even as a new member of the University Club, plaintiff does not have standing now to seek injunctive relief in this case. He has not demonstrated that he

will suffer injury which is concrete, particularized and imminent. *Proctor,* 32 F.Supp.2d at 832. In opposing defendant's motion to dismiss the amended complaint, plaintiff has offered no evidence establishing that he has visited the Inn in recent months, that he has attempted to use the newly installed temporary ramp, and that he has been unable to gain access to the University Club because the ramp is too steep and springy. In his most recent affidavit, Levy admits that he has not been to the Inn since October 6, 1999 and that he has not attempted to use the newly installed temporary ramp to gain entrance.

Plaintiff has accordingly not produced evidence showing that, as a member of the University Club, he has been denied the benefits of services and programs offered by it. Affidavits submitted by defendants establish that staff of the Inn are available to provide assistance to a disabled person using the temporary ramp. Levy has stated in his affidavit that he would not seek the assistance of staff while using the temporary ramp because in his experience such individuals "are seldom available and the people detailed by the facility to provide such assistance are not particularly well-trained." This conjectural statement does not constitute competent evidence creating a dispute of material fact. Defendants have presented proof that a guest who in fact used the temporary ramp successfully entered the Inn. As indicated by the report of plaintiff's expert, the permanent ramp to be constructed in the very near future will make the Inn fully compliant with the ADA insofar as the accessibility of its facilities is concerned. The Inn will be closed from July 28, 2000 until August 24, 2000 for the necessary construction work. It would have been disruptive and financially burdensome if, because of numerous previously scheduled events at the Inn, work on the permanent ramp was done during June or before July 28.

---

6. The University has expended some $105,000 in constructing the temporary ramp and in

making the other modifications to the Inn mentioned herein.

In sum, the Court has concluded that plaintiff has not proved that he has standing to be ·entitled to· the equitable relief requested. · He has not on this record convinced the. Court that he will suffer future discrimination at the hands of the defendants. *See Proctor,* 32 F.Supp.2d at 832.

Even if the Court were to determine that plaintiff has standing to seek injunctive relief in this case, the Court is satisfied that· the declaratory and equitable remedy requested should not be granted.' In exercising its equitable powers here, the Court will undertake to arrive at a "nice adjustment and reconciliation" between the competing claims. *Weinberger,* 456 U.S. at 312, 102 S.Ct. 1798. Balancing the conveniences of the parties and the manner in which they would be affected by the equitable relief requested, the Court would withhold the granting of declaratory relief and the issuance of an injunction even though plaintiff had the necessary standing and even though the University may not as yet have fully complied with all the requirements of the ADA.

For these reasons, the Court concludes that plaintiff is not entitled to the declaratory and injunctive relief sought by him in the amended complaint.

### (b)

### *Damages*

■ Based on the October 6, 1999 incident, plaintiff Levy seeks compensatory and punitive damages. He asserts that since he was not able to attend the Bar Association meeting because of his disability, he has suffered embarrassment, humiliation and other emotional injury. Were the Court to permit plaintiff's claims for damages to be presented to a jury, it would, of course, be for the jury to determine whether this experienced litigator, who is regularly subjected to the stresses of trials and other aspects of a busy trial practice, was emotionally damaged to the extent claimed when he was unable to attend a lawyers' meeting.[7] However, on the record here, the Court is satisfied as a matter of law that plaintiff's claims may not be presented to a jury. The Court has concluded that plaintiff is not entitled· to recover any damages in this case because facts of record establish that the University did not violate the ADA when one of its many facilities was not wheelchair accessible on October 6, 1999.

Any injury suffered by plaintiff was proximately caused by the representative of the Bar Association who arranged for the meeting of the Criminal Law and Practice Section at the Inn. Plaintiff Levy had previously been Chairperson of the Section and had attended meetings on a regular basis. Attorney Bob Dean certainly knew or should have known that Levy used a wheelchair. Although Dean was informed by a representative of the Inn that it was not wheelchair accessible and had even· received a catering information sheet so stating, he nevertheless rented the Club's facilities at the Inn so that the meeting could be held there. Other similar facilities owned and operated by the University fully complied with the ADA. Disregarding information provided to him, Dean rented the Inn for the meeting and thus was primarily responsible for any emotional injury suffered by plaintiff.

In any event, based on the record here, the Court has concluded that the University did not on October 6, 1999 violate the ADA. As noted, Title II of the ADA makes it illegal for a public entity to exclude from participation in or deny the benefits to a qualified person with a disability of its services or programs. *See* 42 U.S.C. § 12132. However, federal law does not "require a public entity to make each of its existing facilities accessible to and useable by individuals with disabilities." 28 C.F.R. § 35.150(a)(1). Rather, the issue in a case

---

7. There is no evidence that plaintiff suffered compensatory damages after he became a member of the University Club.

like this one is whether the service or program was inaccessible "when viewed in its entirety" on the date when the plaintiff was denied access. *Pasuiti*, 87 F.Supp.2d at 223. Therefore, before this Court may find that the statute was violated by the defendants, it must first identify the scope and nature of the programs or services at issue before it can determine whether such programs or services, when viewed in their entirety, were inaccessible.

Plaintiff has contended that the service at issue here is solely that offered by the University by way of the Inn. Defendants in turn have argued that the relevant service is the renting out by the University of its dining and meeting facilities to outside entities. The record in this case supports defendants' position.

Plaintiff argues that he was subjected to wrongful discrimination by the University on October 6, 1999 when he attempted to attend but was denied access to a Bar Association meeting being held at the Inn. However, defendants have presented uncontroverted evidence which establishes (1) that all the University's dining and meeting facilities and services offered for rental to outside entities are wheelchair accessible, with the exception of the Inn; (2) that the Bar Association was placed on notice, prior to renting the Inn for its meeting, of the inaccessibility of the Inn; (3) that there exist at the University other dining and meeting facilities which offer amenities similar to the Inn and which were accessible at the time of rental; and (4) that the Bar Association nevertheless chose to rent the Inn in spite of its notice that the Inn was wheelchair inaccessible. In particular, the University's Golf Course Club House is a new facility which is wheelchair accessible and which offers services and amenities similar to those provided by the Inn. The Inn and the Club House are treated interchangeably by the University's dining service staff, and when the Inn is not available, persons seeking a booking are referred to the Club House.

When these unchallenged facts are applied to the relevant law, this Court concludes that defendants' rental of their dining and meeting facilities to outside entities, when viewed in its entirety, was not inaccessible under the ADA. There were comparable facilities at the University other than the Inn which were in fact accessible and of which the Bar Association had notice. The University did not, as argued by plaintiff, choose the Inn as the single one of its facilities offering the services sought by the Bar Association on October 6, 1999. Were this case to proceed to trial, plaintiff would be unable to demonstrate that, as a result of his disability, he was excluded from the use of rented University facilities when viewed in their entirety. *See Pasuiti*, 87 F.Supp.2d at 223. The University was not required to make each separate facility accessible to disabled persons, so long as services, programs or activities were readily accessible when viewed in their entirety. *Id.*

For these reasons, plaintiff is not entitled to present to a jury his claim under the ADA for an award of damages based on the incident which occurred on October 6, 1999.

## (c)

### *The Rehabilitation Act*

Count II of the amended complaint seeks relief under the Rehabilitation Act. As noted, the ADA and the Rehabilitation Act are generally construed to impose the same requirements because of the similarity of the language of the two Acts. *Rogers*, 174 F.3d at 433–34.

The Court has here concluded that plaintiff is not entitled to a recovery under the ADA. For the same reasons stated hereinabove, plaintiff is not entitled in this case to relief under the Rehabilitation Act.

## VI

### *Conclusion*

For all the reasons stated, defendants' motion to dismiss, treated herein as a mo-

tion for summary judgment, will be granted. Since summary judgment in favor of defendants is being entered both as to Count I and Count II of the amended complaint, plaintiff's motion for partial summary judgment must be denied. An appropriate Order will be entered by the Court.