09-0685-cv(L), 09-0952-cv(XAP)
Celeste v. East Meadow Union Free School District

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OF AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel P. Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 21st day of April, two thousand and ten.

PRESENT:    BARRINGTON D. PARKER,
            PETER W. HALL,
            GERARD E. LYNCH,
                                    Circuit Judges.
------------------------------------------------------------------x
Domenick Celeste, as Father and Natural
Guardian of Domenick Celeste, Jr., a minor
under the age of 14 years,

                            *Plaintiff–Appellee–Cross-Appellant*,


        -v.-                                    No. 09-0685-cv(L),
                                                09-0952-cv(XAP)


East Meadow Union Free School District,*

                            *Defendant–Appellant–Cross-Appellee.*
------------------------------------------------------------------x

Appearing for Defendant–Appellant     JULIE A. RIVERA (Lewis R. Silverman, *on the brief*),
                                      Rutherford & Christie LLP, New York, New York.

Appearing for Plaintiff–Appellee:     CLIFFORD Y. CHEN (Stephanie F. Bradley, Adam
                                      Francois Watkins, Watkins, Bradley & Chen LLP,
                                      New York, New York; Martin J. Coleman,

---

* The Clerk of the Court shall revise the official caption of this case to conform to the caption of this summary order.

Woodbury, New York, *on the brief*), Watkins, Bradley & Chen LLP, New York, New York.

On Appeal from a judgment of the United States District Court for the Eastern District of New York (Wexler, *J.*). **UPON DUE CONSIDERATION** it is hereby **ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED** in part, **VACATED** in part, and **REMANDED** for further proceedings in accordance with this order.

Appellant-cross-appellee, East Meadow Union Free School District ("the District"), appeals from a judgment and decision declining to overturn a jury verdict finding that Woodland Middle School violated Title II of the Americans with Disabilities Act ("Title II"), 42 U.S.C. § 12131 *et seq.*, and the Rehabilitation Act of 1973 ("Rehabilitation Act"), *amended*, 29 U.S.C. § 794 *et seq.*, (collectively, "the Acts"). Appellee-cross-appellant, Domenick Celeste, as father and natural guardian of Domenick Celeste, Jr., a former student in Woodland Middle School, appeals on the ground that the district court's jury charge articulated an incorrect standard of liability applicable under Title II. We assume the parties' familiarity with the facts and procedural history of the case.

**Rule 50(b) Motion**

The District argues that the district court abused its discretion in declining to enter judgment as a matter of law under Federal Rule of Civil Procedure 50(b). The District asserts that (1) appellee failed to introduce any objective or expert testimony to support their allegations that the defendant violated Title II, and (2) pursuant to *Borkowski v. Valley Cent. Sch. Dist.,* 63 F.3d 131, 137-40 (2d Cir. 1995), as applied to Title II actions by *Pascuiti v. New York Yankees, et al.,* 87 F. Supp. 2d 221, 223 (S.D.N.Y. 1999), appellee was required to "suggest the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits." The

District argues that because the appellee erred in these two respects, his claim must fail as a matter of law. Judgment as a matter of law under Rule 50(b) is appropriate only when, construing all facts in favor of the prevailing party, (1) "such a complete absence of evidence supporting the verdict" compels the conclusion that "the jury's findings could only have been the result of sheer surmise and conjecture," or (2) there is "such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [people] could not arrive at a verdict against [the moving party]." *Song v. Ives Labs., Inc.,* 957 F.2d 1041, 1046 (2d Cir. 1992) (internal citations and quotations omitted).

We find sufficient evidence on the record for the jury to conclude that Domenick Celeste, Jr. ("Celeste") was denied "meaningful access" to programs offered by Woodland Middle School. *See Henrietta D. v. Bloomberg,* 331 F.3d 261, 273 (2d Cir. 2003) ("[Under the ADA,] an otherwise qualified handicapped individual must be provided with meaningful access to the benefit that the grantee offers . . .. To assure meaningful access, reasonable accommodations in the grantee's program or benefit may have to be made.") (quoting *Alexander v. Choate,* 469 U.S. 287, 301 (1985) (internal quotation marks omitted)). Viewing the evidence in the light most favorable to the plaintiff, Celeste testified that because of his cerebral palsy, which forced him to rely upon crutches when ambulatory and a wheelchair when not, minor architectural barriers in the school forced him to take a ten minute detour each way in order to reach and return from the athletic fields behind the school. Not only did this total twenty minute detour detract from Celeste's participation as a manager of the football team, but it cut almost in half his time to participate in a typical forty-five minute physical education class. In light of this showing of an unnecessary usurpation of Celeste's time, we cannot conclude that the jury relied upon "sheer

surmise and conjecture" in deciding that Celeste was denied 'meaningful access' to the programs provided to all other students at Woodland Middle School. *Song,* 957 F.2d at 1046. The District proffers no compelling argument why Celeste was required to present expert testimony to establish that he was denied meaningful access to programs, nor does it cite any case law establishing that expert testimony is necessary for a plaintiff to meet his burden in this regard.

The District claims in the alternative that *Pascuiti* requires a plaintiff bringing a claim under Title II on the basis of architectural barriers to provide evidence of "cost-effective, plausible method[s] as to how to remedy the alleged violation[] . . .." Defs.' Br. at 13. Assuming *arguendo* that a burden-shifting scheme is applicable to the case at bar, Celeste satisfied its requirements. When applying the burden-shifting scheme to claims under the Rehabilitation Act, the plaintiff's initial burden is "not a heavy one" and requires only that he "suggest the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits," *Borkowski,* 63 F.3d at 137, 140, and Celeste has met that burden. At trial, Appellee's counsel asked Celeste "[w]hat are you asking the school district to do?" Celeste replied: "I would like for them to put curb cuts where I think they should be needed. For an example . . . in the back on the platform by the gym. And [] once you are getting down from that platform they should fix the pavement to make it more accessible to me." Celeste also testified that the cleat cleaners installed across the fence leading to the athletic fields should be removed because the school owns portable cleat cleaners that could be placed near the entrance to the locker rooms. For each of the physical areas found by the jury to have the effect of denying Celeste access to school programs, Celeste offered plausible, simple remedies, which are *de minimis* compared with the corresponding benefits by

4

way of access achieved. [1] We therefore affirm the district court's denial of defendant's Rule 50(b) motion.

**Damage Award Unsupported By The Record**

The District claims that the district court erred in refusing to vacate the jury's damage award. A district court's "determination that the verdict is not excessive will not be disturbed upon appeal unless a manifest abuse of discretion is indicated." *Botsford v. Ideal Trucking Co.,* 417 F.2d 681, 683 (2d Cir. 1969). But "[w]hile a jury has broad discretion in measuring damages, it 'may not abandon analysis for sympathy for a suffering plaintiff and treat an injury as though it were a winning lottery ticket.'" *Scala v. Moore McCormack Lines, Inc.,* 985 F.2d 680, 684 (2d Cir. 1993) (quoting *Nairn v. Nat'l R. R. Passenger Corp.,* 837 F.2d 565, 568 (2d Cir. 1988)).

Celeste presented no testimony about any emotional distress resulting from the conditions that limited his access to Woodland Middle School's athletic fields. Insofar as emotional damages are concerned, he testified only to feeling embarrassment at the bus depot when he was forced to disembark from a crowded school bus by himself and at a location different from where the rest of the students exited the bus. The jury, however, did not find that the conditions at the bus depot violated the Acts with respect to architectural barriers. The jury found on the evidence presented that the only cognizable architectural barriers affecting Celeste's access to school programs were those in and around the athletic fields. Because the jury's findings with respect to such barriers do not correspond with what Celeste testified was the sole source of his emotional

---

[1] The jury found that there were three areas of the school that had the effect of denying Celeste access to the programs offered there: (1) the walkway between the gym and athletic fields, (2) the gates between the gym and athletic fields, and (3) the athletic [and/or] physical education programs on the athletic fields.

distress, we hold that the damages awarded by the jury are arbitrary in light of the evidentiary record. The district court, therefore, exceeded the bounds of its discretion when it did not vacate that award.

Even when a district court abuses its discretion by upholding an excessive jury award, however, a court of appeals is prohibited from reducing that jury award *sua sponte*. *Scala*, 985 F.2d at 684. Instead, the plaintiff is entitled either to a new trial on the issue of damages or to stipulate to a remittitur of damages. *See Phelan v. Local 305*, 973 F.2d 1050, 1064 (2d Cir. 1992); *see also* 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2820, (2d ed. 1995) at 216 ("If the appellate court concludes that the verdict is excessive, it need not necessarily reverse and order a new trial. It may give plaintiff an alternative by ordering a new trial unless plaintiff will consent to a remittitur in a specified amount."). Because the record offers no basis on which we could apportion damages, however this case is unamenable to remittitur and we accordingly vacate the jury award affirmed by the district court and remand for a new trial on the issue of damages. *Cf. De Centeno v. Gulf Fleet Crews, Inc.* 798 F.2d 138, 143 (5th Cir. 1986) ("[W]here we cannot determine the reason the verdict is excessive -- because it is unclear whether the jury improperly awarded sums . . . or whether it simply awarded excessive sums for legally recoverable items of damage -- we elect to remand [the] case for a new damage trial.").

**Cross-Appeal**

Celeste moved for summary judgment before trial on the ground, *inter alia,* that the bus depot at Woodland Middle School, as well as the sidewalk near Cynthia Drive, violated the ADA as a matter of law. Following the close of evidence Celeste renewed his motion for summary judgment and also moved for judgment as a matter of law. Celeste cross-appeals on the ground

that the district court, in denying his motions, failed to consider the heightened ADA liability standard applicable to facilities constructed after January 26, 1992 ("new construction"), 28 C.F.R. § 35.151(a), and that had it applied the correct standard, it would have found that the bus depot and Cynthia Drive sidewalk are non-ADA compliant as a matter of law. The defendant does not contest the merits of Celeste's claim that the court applied an incorrect ADA liability standard. Instead, defendant principally argues that Celeste failed to preserve the claim for appeal. There is no dispute among the parties that the bus depot and Cynthia Drive sidewalk were constructed after 1992.

We review *de novo* a denial of a motion for judgment as a matter of law. *SEC v. DiBella,* 587 F.3d 553, 563 (2d Cir. 2009). "This court must decide whether a genuine issue of material fact exists and, if not, whether the moving party is entitled to summary judgment as a matter of law." *Kinney v. Yerusalim,* 9 F.3d 1067, 1070 (3d Cir. 1993).

The ADA mandates that any new construction must be "readily accessible to and usable by individuals with disabilities." 28 C.F.R. § 35.151(a). In particular, these projects must conform to the Uniform Federal Accessibility Standards (UFAS) or the Americans With Disabilities Act Accessibility Guidelines (ADAAG), unless "it is clearly evident that equivalent access to the facility or part of the facility" is accomplished by other methods. *See id.* § 35.151(c). The regulations also provide specific guidelines for new pedestrian walkways and bus stops: "Newly constructed or altered street level pedestrian walkways must contain curb ramps or other sloped areas at intersections to streets, roads, or highways." *Id.* § 35.151(e)(2); *see also id.* § 35.151(b); ADAAG §§ 10.2.1(2), 4.3.2.(1) (requiring that new bus shelters "be connected by an accessible

route to the boarding area" and should, "to the maximum extent feasible, coincide with the route for the general public").

As currently designed, the bus shelter lacks a curb cut on the side where buses pick up and drop off students each day. Instead, a disabled student seeking to board or disembark at the bus shelter is required to use a curb cut either on the opposite side of the platform, which requires him or her to travel in the bus lane and the adjacent driveway, or to use a curb cut more than 150 feet away which crosses another vehicular way. These alternative routes are plainly insufficient to qualify as accessible, falling far short of "equivalent access" and making the bus shelter all but unusable by disabled individuals. *See id.* § 35.151(c). We find that the District's recently constructed bus shelter violates the ADA as a matter of law and remand only for a determination of relief with respect to that facility.

With respect to the sidewalk near Cynthia Drive, the defendant contends that it does not "own" this property and therefore cannot be liable for any violations; however, their witness at trial stated that the District is required to "maintain the sidewalk." It is not clear from the witness's testimony what he meant when he said that the District maintains the sidewalk, but if the District effectively controls this area and did so at the time of the new construction, then liability may still obtain. Although the plaintiff raises claims under Title II and the Rehabilitation Act, Title III may provide some guidance: it prohibits discrimination "by any person who owns, leases (or leases to), or *operates* a place of public accommodation." 42 U.S.C. § 12182(a) (emphasis added); *see Powell v. Nat'l Bd. of Medical Examiners,* 364 F.3d 79, 85 (2d Cir. 2004) ("[T]he standards adopted by Titles II and III of the ADA are, in most cases, the same as those required under the Rehabilitation Act."). Under Title III, "'to operate' means 'to put or keep in

8

operation,' 'to control or direct the functioning of,' or 'to conduct the affairs of; manage.'"

*Lentini v. Cal. Ctr. for the Arts,* 370 F.3d 837, 849 (9th Cir. 2004) (quoting *Neff v. Am. Dairy Queen Corp.,* 58 F.3d 1063, 1066 (5th Cir. 1995)). If this standard extends to Title II claims, and the District exercises the requisite control, it may still be subject to liability. Because both the law and the facts are undeveloped on the record now before us, we remand this question to the district court for a full inquiry in the first instance.

**Conclusion**

We have considered the remainder of the parties' arguments and found them to be without merit. For the foregoing reasons the district court's determination of liability under the Acts for denial of access to school programs conducted on the athletic fields is AFFIRMED, the award of damages is VACATED and the case is REMANDED to the district court for a new trial with respect to damages arising out of Celeste's denial of access to programs conducted on the athletic fields, as well as from the construction of the bus depot, and for a new trial on liability and damages, if any, arising from the construction of the Cynthia Drive sidewalk.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk