**ACCESS NOW, INC., and Edward Resnick, Plaintiffs,**

v.

**SOUTH FLORIDA STADIUM CORP., et al., Defendants.**

No. 002261CIV.

United States District Court,
S.D. Florida.
Miami Division.

Sept. 10, 2001.

Stephen Michael Cody, Miami, FL, for Plaintiff.

Stanley Howard Wakshlag, Carol Celeiro Lumpkin, Devand Anthony Sukhdeo, Akerman Senterfitt & Eidson, Miami, FL, for Defendant.

## ORDER

K. MICHAEL MOORE, District Judge.

This Cause is before the Court upon Defendants' Motion for Summary Judgment. The Court has consider the motion, response, and reviewed pertinent portions of the record, and accordingly enters the following Order.

### BACKGROUND [1]

This case arises from Plaintiff's allegation that he was denied access to Proplayer stadium because of his disability; he seeks injunctive relief pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq.* Edward Resnick is a quadriplegic, restricted to a wheelchair, and is disabled within the meaning of the Act. He is the president of Access Now, Inc. a not-for-profit corporation, associated for the purpose of bringing businesses into ADA compliance. Plaintiffs bring this suit against the South Florida Stadium Corporation (SFSC), a privately-held corporation that owns Proplayer Stadium (the Stadium); and the Stadiums' primary tenants, the Miami Dolphins and the Florida Marlins. Proplayer is a public accommodation that was constructed in 1987, prior to the enactment of the ADA. When configured for football games, the Stadium has approximately 75,000 seats, and over 40,000 seats when configured for baseball. Of these seats, approximately 190 are wheelchair accessible available during football games, and 171 for baseball games.

The Complaint alleges that Resnick was subjected to discrimination once in May 2000 when he visited the Stadium for a Marlins baseball game, and once in November 1999 when he attempted to buy tickets for a Dolphins game, but was unable to purchase accessible seating.[2] The Complaint alleges that the Defendants are operating the Stadium in a discriminatory manner prohibited by the ADA and identifies a list of its violations, including: failure to provide unobstructed lines of sight for wheelchair seating; failure to provide the required number of wheelchair accessible locations; failure to integrate unobstructed-sight seating into the overall seating plan;[3] failure to provide the ap-

---

1. The facts presented herein are undisputed unless otherwise noted.

2. Complaint at ¶ 4.

3. There is accessible seating provided in the end zone that offers a line of sight unobstructed by standing fans. Resnick Deposition at 80.

propriate number of accessible parking spaces; and various other violations, relating to picnic and food service areas, and restrooms.[4]

The architectural barriers that form the basis of this Complaint were identified by Plaintiffs' experts during pre-litigation inspection. Plaintiffs assert that they have reasonable grounds for believing that Defendants will not remove the architectural barriers.[5] Plaintiffs contend that these barriers deny persons with disabilities—particularly, persons with mobility impairments—full and equal enjoyment of the goods, services, and accommodations of the Stadium. Plaintiffs argue that because removal of the identified barriers is readily achievable and technically feasible, Defendants are obligated to make the requested modifications.

Defendants moved for summary judgment, challenging Plaintiffs' right to bring this case and their ability to prove the elements thereof. Defendants contest Plaintiff Resnick's standing to sue, as he has not shown that he was denied access to any part of the Stadium, and accordingly he has not suffered an injury in fact. Defendants further challenge Access Now's associational standing, which is predicated entirely on Plaintiff Resnick's two experiences. Defendants deny the existence of architectural barriers in the Stadium, and to the extent that the technical violations identified by Plaintiffs are barriers, Defendants assert that Plaintiffs have failed to demonstrate that their removal is readily achievable. Finally, Defendants assert that they have met and exceeded their obligations under the ADA.

*The Summary Judgment Standard*

Under Rule 56(c) of the Federal Rules of Civil Procedure:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). Summary judgment is appropriate only if the record evidence shows that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." *Jeffery v. Sarasota White Sox, Inc.,* 64 F.3d 590, 593 (11th Cir.1995). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment for the moving party is proper. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In applying this standard, the Court must view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. *Id.* at 157, 106 S.Ct. 1348.

However, the non-moving party may not "rest upon the mere allegations and denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reason-

---

4. The Complaint expresses Plaintiffs' belief that this list is not exhaustive, and that other violations may be identified pursuant to a full inspection. Complaint at ¶ 22.

5. Complaint at ¶ 26.

ably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The non-moving party may not rest on mere allegations, but rather must raise significant probative evidence sufficient for a jury to find in their favor. *See La-Chance v. Duffy's Draft House, Inc.*, 146 F.3d 832, 835 (11th Cir.1998). In fact, "the plain language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The failure to present proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment. *Id.*

### DISCUSSION

#### I. Title III of the Americans with Disability Act

The Americans with Disability Act is divided into three sections: Title I regulates discrimination in the workplace; Title II prohibits discrimination by public entities; and Title III prohibits discrimination by private entities in places of public accommodation. Title III provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). In a private action under the ADA, a court may pro-

vide "any person who is being subjected to discrimination on the basis of disability in violation of" the Act injunctive relief, requiring a defendant to make its facility readily accessible to and usable by individuals with disabilities. *Id.* § 12188(a)(2). Discrimination prohibited by the Act includes a private entity's "failure to remove architectural barriers ... in existing facilities ... where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). Where removal is not readily achievable, the entity incurs liability if it fails to make those goods, services and facilities "available through alternative methods if such methods are readily achievable,"[6] that is, "easily accomplishable and able to be carried out without much difficulty or expense."[7]

The Act sets forth accessibility guidelines, which identify the minimum technical requirements for ADA compliance for new construction and alterations to existing facilities.[8] Failure to abide by the Guidelines in new construction evidences intentional discrimination against disabled persons. *See Association for Disabled Americans, Inc. v. Concorde Gaming Corp.*, 158 F.Supp.2d 1353, 1362 n. 5 (S.D.Fla.2001). The Act imposes a less rigorous standard of compliance on "existing facilities," constructed before its enactment on January 26, 1993. *Concorde*, 158 F.Supp.2d at 1362. "The compromise Title III makes is to require only *reasonable* modifications and *readily achievable* barrier removals or alternative methods, when the disabled are subjected to de facto discrimination in places of public accommodation." *Concorde*, 158 F.Supp.2d at 1362. The parties agree that because the Stadi-

---

6. *Id.* § 12182(b)(2)(A)(v).

7. 28 C.F.R. § 36.304(a).

8. *See* 28 C.F.R. Pt. 36, App. A. The Guidelines are known as the Americans with Disabilities Act Accessibility Guidelines for Buildings and Facilities, or "ADAAG."

um predates the ADA, its obligation to comply with the ADA is governed by the "readily achievable" standard.

■■■ Plaintiffs' prima facie case depends on Resnick's ability to show the following: 1) that he is disabled; 2) that the Stadium is a place of public accommodation; and 3) that he was denied full and equal treatment because of his disability.[9] *See Tugg v. Towey,* 864 F.Supp. 1201, 1205 (S.D.Fla.1994); *see also Parr v. L & L Drive-Inn Restaurant,* 96 F.Supp.2d 1065, 1085 (D.Haw.2000). Because his claim alleges discrimination due to an architectural barrier, Plaintiff must further show that the existing facility presents an architectural barrier that is prohibited under the ADA, the removal of which is readily achievable. *Colorado Cross Disability Coalition v. Hermanson Family L.P.,* 264 F.3d 999 (10th Cir.2001);[10] *Parr,* 96 F.Supp.2d at 1085. If Plaintiff makes this initial showing, Defendants have the opportunity to rebut Plaintiff's case by showing that removal of the disputed barrier could not be accomplished without much difficulty or expense. *Parr,* 96 F.Supp.2d at 1085; *Pascuiti v. New York Yankees,* No. 98 CIV. 8189(SAS), 1999 WL 1102748, at *5 (S.D.N.Y. Dec.6, 1999). The analytical framework set forth in *Johnson v. Gambrinus Co./Spoetzl Brewery,* 116 F.3d 1052 (5th Cir.1997), has been adopted by this District, and provides:

> The plaintiff has the burden of proving that a modification was requested and that the requested modification is reasonable. The plaintiff meets this burden by introducing evidence that the requested modification is reasonable in the general sense, that is, reasonable in the run of cases. While the defendant may introduce evidence indicating that the plaintiff's requested modification is not reasonable in the run of cases, the plaintiff bears the ultimate burden of proof on the issue. If plaintiff meets this burden, the defendant must make the requested modification unless the defendant pleads and meets its burden of proving that the requested modification would fundamentally alter the nature of the public accommodation.

*Id.* at 1059 (*quoted in Concorde,* 158 F.Supp.2d at 1363). Courts addressing the issue generally agree that subsection (v) provides an affirmative defense, on which defendants bear the burden of persuading the court that plaintiff's requested modification is not readily achievable. *See, e.g., Colorado Cross,* 264 F.3d at ——, 2001 WL 987475 (adopting *Johnson*'s burden allocation analysis).

Having determined the parties' relative legal burdens, the Court must address Defendant's argument that Plaintiffs' lack standing to bring these claims. Defendants aver that Mr. Resnick suffered no injury based on the violations alleged in the Complaint; that he admitted to his lack of personal knowledge of these violation; and that his inability to establish standing is detrimental to Access Now's associational standing.

## II. Plaintiffs' Standing

■■■ Article III standing requires a plaintiff to demonstrate three things: that he has suffered an "injury in fact;" that the injury was causally connected to the defendant's action; and that the injury will be redressed by judgment in his favor. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d

---

**9.** The first two elements of Plaintiff's case are undisputed.

**10.** At the time of this Order, publication page references were not yet available for this case.

351 (1992). Discrimination suffered in violation of the ADA is an injury sufficient to give rise to an Article III case or controversy. *See Parr v. L & L Drive–Inn Restaurant*, 96 F.Supp.2d 1065, 1079 (D.Haw.2000). Standing is limited to claims for which the plaintiff is "among the injured," *see Lujan*, 504 U.S. at 560, 112 S.Ct. 2130; in the present case, this would include allegations of discriminate against mobility-impaired, wheelchair-restricted persons. Plaintiffs lack standing to complain about violations on behalf of all disabled individuals, as this would expand the standing doctrine beyond the limits of Article III. *See Lewis v. Casey*, 518 U.S. 343, 358 n. 6, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). To the extent that Plaintiffs complain about violations that would discriminate against blind or deaf persons, or any disabilities other than that suffered by Plaintiff Resnick, they lack standing to pursue such claims. *Parr*, 96 F.Supp.2d at 1082.

A plaintiff seeking injunctive relief must additionally allege "a real and immediate—as opposed to a merely conjectural or hypothetical—threat of *future* injury." *Wooden v. Board of Regents of University Sys. of Geo.*, 247 F.3d 1262, 1284 (11th Cir.2001). Absent an allegation that he intends to return to the public accommoda-tion, an ADA plaintiff fails to demonstrate this "irreducible minimum" and thus lacks standing to sue for injunctive relief. *See Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir.2001). A complaint which alleges only past incidents of discrimination "does not support a finding of an Article III case or controversy when the only relief sought is declaratory relief." *Id.* (quoting *Malowney v. Federal Collection Deposit Group*, 193 F.3d 1342, 1348 (11th Cir.1999)).

Resnick's assertions are factually distinguishable from the cases on which the Eleventh Circuit based the *Shotz* holding.[11] Resnick testified that he used to regularly attend games at the Stadium but stopped going in either 1993 or 1994, purportedly because he was dissatisfied with the facility's accommodations. He testified that he was subjected to discrimination at the Stadium on two occasions in 1999 and 2000, and states that he would return, particularly if the alleged barriers are removed.[12] Plaintiff's sincerity is unfortunately undermined by his testimony that he did not initiate the present action earlier because he didn't get to it until May of 2000, and that the decision to initiate the present suit was made by Access Now's executive committee. The Court cannot, however, make a credibility assessment on a summary judgment motion. *Accord*

---

11. *Cf. Proctor v. Prince George's Hosp. Ctr.*, 32 F.Supp.2d 830 (D.Md.1998) (denying standing for claims predicated on a single visit to the hospital following a motorcycle accident); *Hoepfl v. Barlow*, 906 F.Supp. 317 (E.D.Va. 1995) (denying standing to a plaintiff then residing in a different state than the defendant's facility); *Aikins v. St. Helena Hosp.*, 843 F.Supp. 1329 (N.D.Cal.1994) (finding no "real or immediate threat" of future discrimination against plaintiff who spent limited amount of time in region, and visited hospital only because of her husband's illness). Likewise, the plaintiffs in *Shotz* had not stated their intention to return to the County Courthouse subsequent to the isolated incidents on which they based their claims.

12. Declaration of Edward Resnick ¶¶ 3–4. The Complaint does not contain an unambiguous allegation that Plaintiff intends to return to the Stadium, but rather states that he "is likely to be subjected to continuing discrimination by the Defendants in the future." ¶ 4. Resnick testified that he returned to the Stadium in May 2000 because he had been told that the facility had improved its accommodations for disabled guests. Though he was disappointed by his experience, he expressed his desire to patronize the Stadium in the future. *Accord Independent Living Resources v. Oregon Arena Corp.*, 982 F.Supp. 698, 707 n. 4 (D.Or.1997).

*Parr v. L & L Drive-Inn Restaurant*, 96 F.Supp.2d 1065, 1080 (D.Haw.2000) (concluding that scale tipped in favor of plaintiff, who sincerely intended to return to a particular fast-food restaurant, in a case that presented a close question of Article III standing). His personal history of attendance and continued residence in the area support his contention that he will likely patronize the Stadium in the future. Resnick's allegations are sufficient to confer standing upon him to seek relief for violations in the Stadium which affect his specific disability, and that he personally encountered or about which he had actual notice. *See Steger v. Franco, Inc.*, 228 F.3d 889, 894 (8th Cir.2000) (denying standing for three plaintiffs who never visited facility before initiation of suit, but granting standing to blind plaintiff who was unable to use the men's room because its signage was not ADA compliant); *Parr,* 96 F.Supp.2d at 1079 (finding that plaintiff's desire to patronize defendant's restaurant free from discrimination a cognizable interest for standing).

■■■ Plaintiff's entry into the stadium does not automatically confer upon him a presumption that he was injured by any and all architectural barriers therein; his entitlement to relief depends on his showing that he was in fact injured, or subject to discrimination, as a result of the alleged violations. Plaintiff testified that he was aware of a line of cases standing for the proposition that once he enters the premises and experiences any form of discrimination, "that opens the door to every bit of discrimination on a mobility-impaired person."[13] The case on which Plaintiff relies did in fact recognize that plaintiff's standing to complain about barriers he did not

actually encounter.[14] The decision was predicated on the court's finding that the plaintiff had experienced certain barriers personally, and had "actual notice" of their recurrence throughout the facility; as such, would not be required to confront each of those incidents of discrimination in order to demonstrate his entitlement to standing. *See Parr v. L & L Drive-Inn Restaurant,* 96 F.Supp.2d 1065, 1081 (D.Haw.2000) (citing 42 U.S.C. § 12188(a)(2)). The *Parr* case does not support Resnick's entitlement to relief from violations about which he lacked actual knowledge, pursuant either to his personal encounter with those violations or by expert testimony, when the Complaint was filed. Courts in this Circuit addressing the issue have consistently refused to grant injunctive relief absent evidence that the plaintiff actually suffered—and will again suffer—discrimination in violation of Title III. *See Shotz,* 256 F.3d at 1081; *Association for Disabled Americans v. City of Orlando,* 153 F.Supp.2d 1310, 1322 (M.D.Fla.2001); *Resnick v. Magical Cruise Co.,* 148 F.Supp.2d 1298, 1301 (M.D.Fla.2001) (finding that review of defendant's website is insufficient to provide actual knowledge of alleged violation); *accord Steger v. Franco, Inc.,* 228 F.3d 889, 895 (8th Cir.2000) (Loken, J.) (dissenting from court's holding, that plaintiff had standing to seek injunctive relief against ADA violations that he did not actually encounter, and reasoning that standing in the case was granted in violation of Article III).

Plaintiff's reliance on this theory is plain, as he testified to having no personal knowledge or memory regarding the barriers identified in the Complaint. When asked to describe in detail the discrimina-

---

13. Deposition at 94–95.

14. *See Parr v. L & L Drive-Inn Restaurant,* 96 F.Supp.2d 1065, 1081 (D.Haw.2000) ("The discrimination occurred as soon as Plaintiff encountered an architectural barrier. Plaintiff should not be required to encounter every barrier seriatim with [the facility] to obtain effective relief.").

tion he suffered, Resnick responded: "Seating, parking, some concession stands, rest room, particularly in the handicapped stall. I frankly don't remember if there's a lower urinal or not. I never use it. And I frankly don't remember the sink, whether they comply, et cetera, because I used to bring my own hand wipes with me when I went to the accessible stall, but it wasn't totally accessible by a long shot."[15] He further testified that he did not visit the picnic area, club seating, or the sky box areas of the Stadium, nor did he inspect the parking area. In fact, Resnick testified that he did not make an effort to learn about the Stadium's accessibility features prior to filing suit.

Plaintiff testified that he encountered difficulty with wheelchair seating, and the restrooms; these are the only two elements of the Stadium that he sought access to, personally inspected, or had actual knowledge of.[16] Accordingly, Plaintiffs has standing to complain about the barriers he has identified associated with these elements of the Stadium. Plaintiff lacks standing to complain about parking,[17] concession stands, or signage.[18] His claims arising from these alleged violations have no more foundation than those raised in *Resnick v. Magical Cruise Co.*, 148 F.Supp.2d 1298 (M.D.Fla.2001) (rejecting

plaintiff's reliance on "futile gesture" exception).[19] The Court cannot ignore Plaintiff's admission that he lacked knowledge of these purported violations at the time the Complaint was filed, nor will the Court "piece together support for" his claims. *Shotz*, 256 F.3d at 1081.

### III. Plaintiffs' Case

As noted above, Plaintiffs satisfy their initial burden by showing that Resnick was denied full and equal enjoyment of the services or privileges of the Stadium because of his disability. Unless Plaintiffs have produced evidence that the Stadium presents architectural barriers which are prohibited by the ADA, and that the removal of these barriers is readily achievable, they have not met their burden. *Colorado Cross*, 264 F.3d 999; *Concorde*, 158 F.Supp.2d at 1363. Plaintiffs' case is based on two incidents of alleged discrimination: Resnick's attempt to attend a Dolphins game in 1999, and his attendance of a Marlins game in May of 2000.

Resnick testified that he was turned away from a football game due to a lack of accessible seating. Plaintiff testified that he did not personally try to purchase the tickets, that one of his companions tried by telephone to buy tickets. He reported

---

**15.** Deposition at 83. Deposition at 93, 114–15. The allegations relating to these accommodations are based on Plaintiff's experiences in 1993 or 1994, and observations made by Bill Cody, who is neither an architect nor an engineer, but conducted a prelitigation inspection of the Stadium at Plaintiff's request.

**16.** Plaintiffs' expert identified a myriad of other ADAAG violations, including ramp inclines that exceeded an 8.33% rise, and improper signage for accessible facilities. As discussed above, these violations were not identified at the time of the filing of the Complaint, and Plaintiffs lack standing to complain about these violations.

**17.** It was admitted by the Plaintiffs that the Stadium provides the number of parking

spaces required by the ADA, by virtue of their failure to deny Defendants' Request for Admissions. Fed. R. Civ. Pro. 36.

**18.** Nor does Access Now have standing to complain about these violations. *See Resnick v. Magical Cruise Co.*, 148 F.Supp.2d 1298, 1301 n. 1 (M.D.Fla.2001) ("[I]f Resnick lacks standing so does Access Now.").

**19.** 42 U.S.C. § 12188(a)(1) provides remedies without requiring that "a person with a disability ... engage in a futile gesture if such person has actual notice that a person or organization covered by this subchapter does not intend to comply with its provisions."

that the game was sold out: "That's what we were told, sold out in terms of wheelchair seats."[20] Resnick explained that all seating for the game was sold out, which he concluded from the fact that the game was televised. At that point, no one could buy tickets for the event.

Inherent in Plaintiffs' argument, that the unavailability of accessible seats for a sold-out game constitutes discrimination, is a presumption that disabled patrons are entitled to a benefit which exceeds that available to the general public. The Act does not require a facility to afford a disabled guest a greater opportunity to purchase seats than his able-bodied counterpart.[21] Plaintiff's case depends on his ability to show that he was denied access under circumstances which give rise to the inference that denial was based solely on his disability, *see Mayberry v. Von Valtier*, 843 F.Supp. 1160, 1166 (E.D.Mich.1994); his failure to demonstrate that Defendants refused to provide him access *because of his disability* is fatal to his claim of discrimination with regard to this incident.

Plaintiff's second experience with the Stadium (relevant to his Complaint) occurred in May 2000, when he attended a Marlins game. Plaintiff sat with his wife in the area of his choosing, behind first base. He complains that the wheelchair seating did not meet ADAAG requirements; "more than being not compliant, it doesn't even work."[22] Resnick complained that the area was too small, that it was less than forty-eight inches deep. He explained that it was difficult for him, operating a power chair, to maneuver into the space.[23] He spent most of the game moving forward and back to let people pass around him; if his seat had been properly sized, he would not have had to move. His line of sight was blocked when the people in front of him stood up. He visited one restroom during his visit.

Accepting the evidence set forth above, the Court considers in turn whether the obstacles Resnick encountered constitute barriers prohibited by the Act; and whether removal of such barriers is readily achievable.

A) *Existence of Architectural Barriers*

The parties sharply disagree in their assessment of whether the violations Resnick allegedly encountered constitute architectural barriers prohibited by the Act. Defendants contend that Plaintiffs have offered no proof that the alleged violations are barriers prohibited by the Act. Plaintiffs' Complaint presumes that any technical noncompliance with ADAAG constitutes an actionable violation of the Act. Their argument, advanced in their opposition memorandum, relies in part on a statement by the Department of Justice, describing architectural barriers as "elements of a facility that impede access by people with disabilities," which include more than just obvious physical impediments that block wheelchair access.[24]

---

**20.** Deposition at 70. Resnick's allegations are not based on his personal knowledge, but rather his reliance on his companions's inquiry. Resnick could not remember who tried to purchase the tickets, nor could he testify as to either exactly what inquiry was made, or how the Stadium representative may have responded to specific issues.

**21.** Notwithstanding, Defendants proffered evidence of its policy of holding wheelchair seats exclusively for purchase by disabled patrons up to and including the day of the event or game. .

**22.** Resnick Deposition at 79.

**23.** "I did it, but I had to do it very slowly." Resnick Deposition at 128.

**24.** Plaintiffs' Memorandum of Opposition, at 13 (quoting Title III's Technical Assistance Manual, § III–4.4000).

Conversely, Defendants' witness DiLuigi testified that he would not consider a deviation from the new construction standards a barrier unless the deficiency actually impeded access to that element of the facility. Defendants argue that because the ADAAG standards Plaintiffs seek to impose upon the Stadium relating to seat accessibility are not even applicable to existing facilities, any violation thereof cannot be a barrier.[25]

 The Act does not require ADAAG compliance of existing facilities; accordingly, the Court cannot determine the Defendants' liability from finding that elements of the Stadium deviate from those Standards. *See, e.g., Association for Disabled Americans v. City of Orlando,* 153 F.Supp.2d 1310, 1322 (M.D.Fla.2001) (finding no legal duty to correct technical ADAAG violations in existing facility under Title II). The Standards nevertheless provide "valuable guidance" for determining whether an existing facility contains architectural barriers. *Pasuiti v. New York Yankees,* 87 F.Supp.2d 221, 226 (S.D.N.Y.1999). The *Pasuiti* court permitted the plaintiff therein to compare the challenged facility with the ADAAG standards "as part of their efforts to establish individual barriers to access." *Id.* A finding of noncompliance is not tantamount to finding an ADA violation; plaintiff carries the additional burden of showing that removal of the barriers is readily achievable. Upon consideration of both parties' arguments, the Court concludes that the obstacles encountered by Resnick, relating to his allegations that the wheelchair seating and restrooms were inaccessible, constitute prohibited barriers to access, which Defendants must correct if readily achievable. It is this part of Plaintiffs' case that ensures that Defendants' liability is limited to the "substantially less rigorous" standard of compliance contemplated for existing facilities under the Act.[26]

 Deviation from the standards is relevant but not determinative; it is one consideration from which the court may conclude that noncompliance impedes access. At trial, a defendant may be able to rebut this evidence by showing that despite the technical noncompliance, the challenged accommodation in fact allows disabled persons effective access. However, on summary judgment the Court cannot weigh the evidence proffered by the parties, but may only consider whether Plaintiffs have adduced sufficient evidence of each element of their claim in satisfaction of their initial burden.

Defendants have raised this argument in their memorandum, observing that Plaintiffs have not produced evidence of architectural barriers which would prevent disabled persons from attending events at the Stadium.[27] Defendants represent that the Stadium is substantially compliant, and proffered substantial evidence of efforts made to accommodate needs and comforts of disabled guests that exceed their ADA obligations, such as the provision of a coordinator to address the concerns of disabled guests, and the availability of valet parking. Defendant SFSC contends that it has spent over 19 million dollars on ADA improvements on the Stadium. Defendants also relied partially on two prior lawsuits brought in this District in which nearly identical allegations were asserted;[28] De-

25. Defendants do not argue that the Stadium complies with the ADAAG Standards relating to seating accessibility; as such, the parties' dispute is purely legal, and not factual.

26. *See* 28 C.F.R. Part 36, App. B (commentary).

27. Motion for Summary Judgment, at 3.

28. *Paralyzed Veterans Assoc. of Fla., Inc. v. Miami Dolphins, Ltd.,* Case No.: 94–1735–CIV–KING. The settlement agreement required Defendants to add several wheelchair seating sections throughout the Stadium, specifically identifying the number and location

fendants contend that the satisfactory resolution of these cases supports their defense that the Stadium satisfies its ADA obligations.

The Court cannot take such factors under consideration in determining whether Defendants are liable for the removal of architectural barriers identified in the present suit for two reasons. First, a private entity's good faith effort or attempt to comply with the ADA is only applicable in civil actions brought by the Attorney General, and only when considering the amount of civil penalty. 42 U.S.C. § 12188(b)(5); *Independent Living Resources v. Oregon Arena Corp.*, 982 F.Supp. 698, 707 (D.Or.1997). Second, Defendants' argument embraces the program accessibility standard, applicable to public entities under Title II of the Act, which considers whether the disputed facility is readily accessible to disabled persons, and affords defendants an "undue burden" defense. That standard is inapplicable to the Stadium's liability as a private entity pursuant to Title III. *Cf. Association for Disabled Americans v. City Orlando*, 153 F.Supp.2d 1310, 1316–1317 (M.D.Fla.2001). Consequently, while Defendants' representation that the Stadium is readily accessible to disabled persons may be commendable, it is not relevant.

**B)** *Readily achievable*

The crux of Plaintiffs' case depends on showing that removal of the identified barriers is readily achievable. The Act recognizes a balance between the right of disabled persons to enjoy access to public accommodations free of discrimination and the costs attendant to altering facilities constructed before its enactment. Consistent with this compromise, Title III requires only that a private entity "take remedial measures that are (a) effective, (b) practical, and (c) fiscally manageable." *See Association for Disabled Americans, Inc. v. Concorde Gaming Corp.*, 158 F.Supp.2d 1353, 1363 (S.D.Fla.2001).

To this end, the plaintiff must demonstrate that an injunction—particularly a considerably expensive injunction—is justified by the relief that it will provide. Whether a requested alteration would be effective is relative to the impediment presented by the barrier and the associated cost of removing it. For example, removal of a barrier that actually denies disabled persons access to an element of the accommodation would be greatly effective and the court would be justified in imposing a costly injunction, provided that the cost is proportionate to the benefit it offers. Conversely, injunctive relief would not be appropriate for *de minimis* violations that "do not materially impair the use of an area for its intended purpose, . . . [or] pose any apparent danger to persons with disabilities." *Parr v. L & L Drive-Inn Res-*

---

of these new seats. Judge King approved the settlement, and though the plaintiffs sought court assistance in enforcing the agreement, the record reflects that parties ultimately resolved their dispute without court intervention.

The other case, *Shtoz v. South Florida Stadium Corp.*, Case No.: 97–2911–CIV–LENARD, challenged the absence of wheelchair accessible seating directly in front of the stage. Judge Lenard, adopting the recommendation of Magistrate Judge Garber, denied plaintiff's request for relief. Magistrate Judge Garber accepted the testimony of Defendants' witnesses that the Stadium was in full compliance with the ADA, and that Defendants had gone beyond its obligations under the Act. Defendants rely on the testimony of those same witnesses, James A. Diluigi and Kevin G. McGuire, to support their present motion for summary judgment. This Court cannot, on a summary judgment motion, give credence to this testimony, which is contested by the non-moving party.

*taurant,* 96 F.Supp.2d 1065, 1086 n. 26. (D.Haw.2000).

### 1. Accessibility of Seating

 To the extent that it is readily achievable, a public accommodation must provide a reasonable number of wheelchair seating spaces, dispersed throughout the arena, which provide lines of sight and choice of admission prices comparable to those for members of the general public. 28 C.F.R Part 36, App. A, § 36.308(a). Plaintiffs' argument that Defendants have a continuing obligation to add accessible seating until they approach the ADAAG goal of making 1% of total seating wheelchair accessible has no legal basis. As an existing facility, the Stadium must provide a "reasonable number" of accessible wheelchair seats. § 36.308(a).[29] Plaintiffs relied on the ADAAG Standard and did not offer evidence or argument that the number of wheelchair seats at the Stadium is not reasonable. Defendants' proffered evidence that the accessible stadium is underutilized, therefore, remains undisputed.[30] As such, there is no basis for finding that Defendants have failed to provide a reasonable number of wheelchair seating spaces. *Accord Association for Disabled Americans v. City of Orlando,* 153 F.Supp.2d 1310, 1320–1321 (M.D.Fla.2001) (dismissing claims of plaintiffs who presented no evidence that they were excluded in any way by the non-compliant aspects of the facility, even though those elements presented difficulties and inconveniences of varying degrees). While not determinative of Defendants' obligation to remedy this contested barrier, Plaintiffs have failed to show that its requested modification would be effective—that is, that it would improve access to the Stadium.

Resnick could not personally attest to the alleged deficiencies relating to either dispersal of wheelchair seating or lines of sight from various locations.[31] The Plaintiffs relied primarily on expert testimony identifying technical noncompliance with regard to these elements.[32] One expert, William Jordan, suggested a complete renovation, adding 283 seats to the Stadium. His plan is illustrated on a diagram of the Stadium, onto which he marked sections that could accommodate additional wheelchair seating. Plaintiffs' other expert, Thomas Ricci, opined that it would be possible to install additional wheelchair seating locations, estimating that the project would cost between $125,000 to $308,000 for each group of twelve seats, or $3,500 to

---

**29.** Even newly constructed stadiums are expected only to meet substantial compliance. *See Paralyzed Veterans of America v. Ellerbe Becket Architects & Engineers, P.C.,* 950 F.Supp. 393, 399 (D.D.C.1996).

**30.** Defendants' testimony regarding its "no sale" policy of holding accessible seats up to and including game day is likewise uncontested. *See* Declaration of Andrew Major, at ¶¶ 3–4 (Exh. "E" to Defendants' Motion for Summary Judgment). Because the Court finds that Plaintiffs failed to make their initial showing of Title III discrimination, evidence of Defendants' affirmative defense is not relevant. Nevertheless, Defendants' witnesses testified that making the requested seating changes would reduce the total number of seats below 70,000, rendering it ineligible to

host SuperBowl games. *See* Declaration of Thomas Gray, at ¶ 8; Declaration of Bruce Schultze, at ¶ 3.

**31.** He acknowledged that the allegation that the Stadium had line-of-sight problems when configured for football games was merely "an allegation ... subject to proof" that he is not competent to offer because he lacks any personal knowledge relevant to this claim. Resnick Deposition at 109.

**32.** Resnick Deposition at 77. Throughout the examination of Plaintiffs' expert witness William Jordan, counsel instructed the witness to assume that the Stadium had been constructed after enactment of the ADA, and further, that the facility was subject to the stringent ADAAG.

$5,000 for each individual seat added throughout the Stadium.

■ Plaintiffs' entire argument on this element of their case is captured in a single paragraph, reflecting the experts' opinions, and concluding without discussion that this plan can be accomplished easily and without much difficulty or expense. Admittedly, "readily achievable" is a fact-intensive inquiry that will infrequently be decided on summary judgment; however, the plaintiff cannot survive summary judgment without producing "sufficient evidence to satisfy his burden that his suggested method of barrier removal is readily achievable." *Colorado Cross Disability Coalition v. Hermanson Family L.P.*, 264 F.3d 999 (10th Cir.2001) (affirming judgment as a matter of law). Plaintiffs have proffered only "speculative concepts ... rather than evidence that a specific design was readily achievable." *Id.* (concluding that without precise cost estimates and specific construction plan, plaintiff could not satisfy its burden of showing that renovation is readily achievable). With almost identical evidence on this record, the Court agrees with the *Colorado Cross* court's determination, as to the sufficiency of plaintiffs' evidence required to satisfy their initial burden.[33]

2. Restroom Access

■ Though he personally visited one restroom at the Stadium during his May 2000 visit, the gravamen of his complaint rests on his experience there seven years earlier, or on observations made by Bill Cody. Unfortunately, the absence of personal testimony hinders the Court's ability to conclude that the identified technical deviations from the ADAAG standards present significant impediments to disabled persons that would justify the imposition of costly renovations. Regardless, Plaintiffs completely failed to suggest a plan of modification, much less demonstrate that such modification would be readily achievable. Though Plaintiffs' expert opined that certain aspects of restrooms could be modified without great difficulty or expense, the report fails to specify the number of restrooms this would affect or the cost to correct the identified restrooms. Plaintiffs have failed to make a prima facie case with respect to this alleged violation.

## CONCLUSION

The Court has examined the record evidence and argument, and concludes that Plaintiffs have failed to adduce competent evidence establishing their prima facie case. Plaintiffs seek modifications that Defendants have no obligation to make, and which have no basis in law. Plaintiffs have suggested ways in which the Pro-Player Stadium could improve its facilities and enhance the comfort of their disabled patrons. Plaintiffs have not, however, demonstrated a violation of law entitling them to injunctive relief. Accordingly, it is hereby ORDERED and ADJUDGED that Defendants' Motion for Summary Judgment be, and same is, GRANTED.

---

**33.** There are three technical components of "accessibility" in wheelchair seating: sightlines, integration, and dispersal. *See Paralyzed Veterans of America v. Ellerbe Becket Architects & Engineers, P.C.*, 950 F.Supp. 393, 398 (D.D.C.1996). Though Plaintiffs challenged accessibility of the existing seating in their pleadings, their only proposed modification was to install new seating; they offered no plan to remove barriers allegedly associated with the current seating.