71 F.3d 497
 105 Ed. Law Rep. 406
 James G. GILLES, Plaintiff-Appellant,
v.
Paul E. TORGERSEN, Acting President, Virginia Polytechnic
Institute and State University; Roland M. Wheeler, Director
of University Services, Virginia Polytechnic Institute and
State University; Ann Spencer, Associate Vice President for
Personnel and Administrative Services, Virginia Polytechnic
Institute and State University; Clarressa M. Morton,
Assistant Director for Event Planning, Virginia Polytechnic
Institute and State University; the Board of Visitors,
Virginia Polytechnic Institute and State University;
Richard M. Bagley; Joseph H. Barlow; William C. Broaddus;
Henry J. Dekker; Buford L. Driskill, Jr.; Horace G.
Fralin; Clifton C. Garvin, Jr.; Robert J. Grey, Jr.;
Michael M. Hawes, Vice President for Finance and
Administration; W. Pat Jennings, Sr.; Cecil R. Maxson,
Jr., Facilities Executive Officer Corporate Facilities
Manager NationsBank Service Corporation; Rhea F. Moore,
Jr.; Rose Miles Robinson; Sue Ellen Rocovich; Robert
Morgan, Student Member; Tom Goodale, Vice President for
Student Affairs, Virginia Polytechnic Institute and State
University, Defendants-Appellees,
and
Beverly H. Sgro, Dean of Students, Virginia Polytechnic
Institute and State University; Jerry D. Cain, General
Counsel and Special Assistant Attorney General, Virginia
Polytechnic Institute and State University; James McComas,
President, Virginia Polytechnic Institute and State
University, Defendants.
 No. 95-1307.
 United States Court of Appeals,
Fourth Circuit.
 Argued Oct. 31, 1995.
Decided Dec. 19, 1995.
 
 ARGUED: J. Patrick Wiseman, Wiseman, Durst, Toddenham & Owen, Austin, Texas, for Appellant. Richard Croswell Kast, Assistant Attorney General, Office of the Attorney General, Richmond, Virginia, for Appellees. ON BRIEF: Jonathan M. Rogers, Jonathan Rogers, P.C., Roanoke, Virginia, for Appellant. James S. Gilmore, III, Attorney General of Virginia, William Henry Hurd, Deputy Attorney General, Paul J. Forch, Senior Assistant Attorney General, Office of the Attorney General, Richmond, Virginia; Jerry D. Cain, General Counsel/Special Assistant Attorney General, Kay Heidbreder, Associate General Counsel/Special Assistant Attorney General, Virginia Polytechnic Institute and State University, Blacksburg, Virginia, for Appellees.
 Before ERVIN, Chief Judge, and WIDENER and WILKINSON, Circuit Judges.
 Vacated and remanded by published opinion. Judge WILKINSON wrote the opinion, in which Chief Judge ERVIN and Judge WIDENER joined.
 OPINION
 WILKINSON, Circuit Judge:
 
 
 1
 Appellant James G. Gilles, an itinerant preacher, challenges the constitutionality of regulations under which Virginia Polytechnic Institute and State University ("Virginia Tech") prohibited Gilles from preaching at the University's drillfield. Ostensibly, Gilles was denied the opportunity to preach at the drillfield pursuant to a sponsorship requirement imposed by Virginia Tech on all outside speakers. The district court upheld the University policy against Gilles' First Amendment challenge.
 
 
 2
 We do not reach the merits of Gilles' constitutional challenge, however, for we find his claim to be nonjusticiable. Gilles lacks standing to raise his objection because he has not been prevented from preaching at Virginia Tech on account of his inability to secure sponsorship; the University has acted as a sponsor on Gilles' behalf. Any injury suffered by Gilles thus did not arise from the sponsorship requirement, but from some other University policy not at issue here. Accordingly, we vacate the judgment and remand with directions to dismiss this lawsuit.
 
 I.
 
 3
 Gilles, a member of the Free Pentecostal Holiness Churches, preaches to college students on campuses throughout the country. He first attempted to preach on the Virginia Tech campus in October of 1985, and has since sought to preach there on three subsequent occasions, in October 1986, November 1988, and, most recently, in April 1992. Each time, Gilles wished to deliver his presentation at the campus drillfield, a large open area of approximately 10 acres lying roughly at the center of campus. On any given day, several hundred students may traverse the drillfield while walking between classes.
 
 
 4
 Gilles has never been allowed to preach at the drillfield. In his initial attempts, he was told that he could preach instead at the University's amphitheater, a more isolated area located west of the drillfield and surrounded by trees. Gilles, though, regarded this location as a less desirable venue for his preaching, because in his view few students congregate at the amphitheater. During his most recent attempt to preach at Virginia Tech, in April 1992, Gilles was again prohibited from preaching at the drillfield, and was eventually offered his choice of three new alternate locations.
 
 
 5
 On December 14, 1992, Gilles filed a complaint alleging that the University's refusal to allow him to preach at the drillfield violated his First Amendment rights. According to the parties, Gilles' claim turns on the validity of Virginia Tech's rule requiring that outside speakers be "sponsored." Ostensibly, Virginia Tech follows a strict regulation that denies access to the campus for outside speakers unless they first find an official University sponsor, including a recognized student organization or a university agency. This blanket sponsorship regulation purportedly applies to all members of the public seeking to use any Virginia Tech facility for the purpose of holding "events" such as speaking engagements.
 
 
 6
 The parties reached an Agreed Order, which they filed with the district court on July 18, 1994. The Order specified three locations (other than the drillfield) for Gilles' preaching activities, and stipulated to a factual record. The Order submitted one central question for the district court's resolution: the constitutionality of Virginia Tech's sponsorship regulation. The district court upheld the sponsorship requirement against Gilles' First Amendment challenge. This appeal followed.
 
 II.
 
 7
 In his appeal, Gilles argues that a blanket sponsorship requirement operates to suppress speech espousing unpopular viewpoints, thus implicating values that lie at the core of the First Amendment. According to Gilles, forcing speakers to secure sponsorship effectively requires them to submit their message to a litmus test, with speakers likely to obtain sponsorship only if their views strike a friendly chord. See West Virginia State Bd. of Educ. v. Barnette, 319 U.S. 624, 638, 63 S.Ct. 1178, 1185-86, 87 L.Ed. 1628 (1943) (One's right to free speech "may not be submitted to vote"). Gilles also contends that in order to gain access to the campus, a speaker may be required to accept a sponsor whose name or viewpoint he does not wish to associate with his speech. Moreover, Gilles maintains, securing sponsorship is unduly burdensome. He asserts that any legitimate interests promoted by a sponsorship regulation could be served equally well by a registration process that uses neutral time, place, or manner standards to assign the use of campus facilities. In Gilles' view, such a registration process would serve the interests relied upon by the district court--preventing the disruption of classes, ensuring the safety of the speaker and the audience, and facilitating the efficient allocation of university facilities.
 
 
 8
 For its part, Virginia Tech defends the sponsorship regulation as an allowable means of furthering these administrative objectives. Moreover, Virginia Tech urges, requiring sponsorship by recognized student organizations serves another legitimate goal: allocation of university facilities to uses that are most desired by students. See Widmar v. Vincent, 454 U.S. 263, 267-68 n. 5, 102 S.Ct. 269, 274 n. 5, 70 L.Ed.2d 440 (1981) ("We have not held ... that a campus must make all of its facilities equally available to students and nonstudents alike...."). Virginia Tech maintains that its campus has not been dedicated for expressive use by the general public, and that its sponsorship requirement is evenly applied without regard to the content of speech. In these circumstances, Virginia Tech alleges, the regulation is a permissible method of furthering the University's goals of managing its property and advancing its educational mission.
 
 
 9
 These are interesting arguments, and a blanket sponsorship requirement would appear to present an intriguing constitutional question in the abstract. Courts, however, must not deal in abstractions, for courts can only adjudicate actual cases, involving issues that are precisely framed by their connection to specific litigants in a concrete context. See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982); United Public Workers v. Mitchell, 330 U.S. 75, 89, 67 S.Ct. 556, 564, 91 L.Ed. 754 (1947) ("For adjudication of constitutional issues, 'concrete legal issues, presented in actual cases, not abstractions,' are requisite.") (citations omitted). This litigation lacks these hallmarks of justiciability.[1]
 
 
 10
 The requirement that a party have standing "is perhaps the most important" condition of justiciability. Allen v. Wright, 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984). "The 'gist of the question of standing' is whether the party seeking relief has 'alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentations of issues upon which the court so largely depends for illumination of difficult constitutional questions.' " Flast v. Cohen, 392 U.S. 83, 99, 88 S.Ct. 1942, 1952, 20 L.Ed.2d 947 (1968) (quoting Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962)). To establish standing, plaintiffs must "show 'injury in fact' resulting from the action which they seek to have the court adjudicate." Valley Forge, 454 U.S. at 473, 102 S.Ct. at 759.
 
 
 11
 Here, any injury suffered by Gilles could not have resulted from the University's sponsorship rule, because Gilles has not been barred from the campus on account of his inability to obtain sponsorship. Instead, the record indicates that the University has acted as an omnibus sponsor on Gilles' behalf. In a letter dated November 16, 1988, Roland M. Wheeler, the Director of University Services, advised Gilles:
 
 
 12
 As I indicated to you in our recent telephone conversation, you have had permission to speak on campus, but I need to know the dates so that we can make arrangements.
 
 
 13
 It is my understanding that you will not be speaking on November 16, 17, 1988.
 
 
 14
 The location of your presentation will be the University Amphitheater. This facility is used for a number of university functions, and we would need to reserve it for your presentation. Therefore, please let this office know of your plans to visit our campus so that proper arrangements can be made.
 
 
 15
 Wheeler has characterized this correspondence as an offer of sponsorship, stating that when Gilles sought permission to preach at the drillfield, "[a]s a matter of accommodation I agreed to sponsor him to preach at an area more appropriate for such activities." The parties' Agreed Order of July 18, 1994, likewise exhibits an intent by the University to act as a sponsor for Gilles. The Order states that the "University will sponsor the plaintiff, on a one time basis, so that he may preach on the University campus at any of the following high traffic locations," including two dining halls and a location designated "Henderson Lawn."[2]
 
 
 16
 To be sure, Gilles has not been permitted to preach at his campus venue of choice, the drillfield. This could not have been as a result of the sponsorship regulation, however. That rule functions as a threshold requirement to gain access to the campus at large. The sponsorship requirement thus addresses the question of campus access generally; it is not framed as a condition on access to the drillfield alone (or any other specific facility):
 
 
 17
 The facilities of the University are intended for the use of its students, faculty, staff, and invited guests participating in University approved programs and activities, sponsored by or under the direction of the University or one of its related agencies or approved [student] organizations....
 
 
 18
 Once a speaker obtains general access to the campus by securing sponsorship, other policies not at issue here must determine the particular campus site most appropriate for his presentation.
 
 
 19
 Here, the University's sponsorship of Gilles granted him threshold access to the campus; Gilles unquestionably has received authorization to use several Virginia Tech facilities. As a result, any designation of the specific locations at which Gilles could or could not preach must have resulted from some other University policy, not the antecedent rule requiring sponsorship. Gilles thus "fail[s] to identify any personal injury suffered by [him] as a consequence of the alleged constitutional error." Valley Forge, 454 U.S. at 485, 102 S.Ct. at 765 (emphasis in original).
 
 
 20
 Gilles' inability to establish injury from the sponsorship requirement is not rescued by the First Amendment overbreadth doctrine. In certain First Amendment cases, plaintiffs may challenge a provision's constitutionality as applied to other parties even if it is constitutional as applied to the parties before the court. See Virginia v. American Booksellers Ass'n, 484 U.S. 383, 392-93, 108 S.Ct. 636, 643, 98 L.Ed.2d 782 (1988); Secretary of State v. Joseph H. Munson, Co., 467 U.S. 947, 956-57, 104 S.Ct. 2839, 2847, 81 L.Ed.2d 786 (1984). This doctrine, however, only assists plaintiffs who have suffered some injury from application of the contested provision to begin with. See Munson, 467 U.S. at 958, 104 S.Ct. at 2847-48. Because Gilles has not been injured by Virginia Tech's sponsorship rule, he cannot establish standing under First Amendment overbreadth principles. Bordell v. General Elec. Co., 922 F.2d 1057, 1061 (2d Cir.1991).
 
 III.
 
 21
 We do not foreclose the possibility that some justiciable case will arise between these parties in the future. At that time, however, the record may reveal what it does not reveal now--namely, the reasons for denying Gilles access to the precise forum he sought and his precise challenge to those reasons. As it is, the parties are jousting over a sponsorship requirement that is not being invoked to bar Gilles from speaking on campus, and they are ignoring whatever time, place or manner guideline is presumably being used to prohibit him from speaking on the drillfield. In other words, the true controversy is eluding the court, while a false one is proposed. In such circumstances, the wisdom of Justice Frankfurter's admonition is apparent:[T]he reason of postponing decision until a constitutional issue is more clearly focused by, and receives the impact from, occurrence in particular circumstances is precisely that those circumstances may reveal relevancies that abstract, prospective supposition may not see or adequately assess.
 
 
 22
 Communist Party v. Subversive Activities Control Bd., 367 U.S. 1, 78, 81 S.Ct. 1357, 1401, 6 L.Ed.2d 625 (1961).[3]
 
 IV.
 
 23
 For the foregoing reasons, we vacate the judgment of the district court and remand with directions to dismiss this lawsuit.
 
 
 24
 VACATED AND REMANDED.
 
 
 
 [1]
 Parties cannot confer justiciability by mutual consent where it otherwise does not exist. In this case, consequently, the parties' submission of the constitutional question to the district court in their Agreed Order does not obviate our independent obligation to investigate justiciability. See FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 230-31, 110 S.Ct. 596, 607-08, 107 L.Ed.2d 603 (1990)
 
 
 [2]
 In response to Gilles' most recent attempt to preach on the drillfield, university officials allegedly informed Gilles that he needed to obtain sponsorship before using campus facilities. Any claim arising from this response, however, has been mooted by the university's subsequent sponsorship of Gilles in the Agreed Order. See Kennedy v. Block, 784 F.2d 1220 (4th Cir.1986) (declining to reach the merits because a settlement agreement rendered the underlying case moot)
 
 
 [3]
 We also hold that the district court did not abuse its discretion in refusing to allow Gilles to file a Third Amended Complaint