**Robert PETERSON, Plaintiff–Appellant,**

**v.**

**NATIONAL TELECOMMUNICATIONS AND INFORMATION ADMINISTRATION; United States Department of Commerce; Michael D. Gallagher, in his capacity as Assistant Secretary of Commerce for Communications and Information; Carlos E. Gutierrez, in his capacity as Secretary of Commerce; Neustar, Incorporated, a Delaware Corporation, Defendants–Appellees.**

**Electronic Privacy Information Center, Amicus Supporting Appellant.**

Robert Peterson, Plaintiff–Appellant,

v.

National Telecommunications and Information Administration; United States Department of Commerce; Michael D. Gallagher, in his capacity as Assistant Secretary of Commerce for Communications and Information; Carlos E. Gutierrez, in his capacity as Secretary of Commerce; Neustar, Incorporated, a Delaware Corporation, Defendants–Appellees.

Electronic Privacy Information Center, Amicus Supporting Appellant.

Nos. 06–1216, 06–1548.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 28, 2006.

Decided Feb. 27, 2007.

ARGUED: James Edward Houpt, Orrick, Herrington & Sutcliffe, L.L.P., Sacramento, California, for Appellant. Charles Wylie Scarborough, United States Department of Justice, Civil Division, Appellate Section, Washington, D.C., for Appellees. ON BRIEF: James Deacon, Orrick, Herrington & Sutcliffe, L.L.P., Washington, D.C., for Appellant. Peter J. Riebling, Roger P. Furey, Katten, Muchin, Rosenman, L.L.P., Washington, D.C., for Appellee Neustar, Incorporated, a Delaware Corporation; Peter D. Keisler, Assistant Attorney General, Chuck Rosenberg, United States Attorney, Scott R. McIntosh,

United States Department of Justice, Civil Division, Appellate Section, Washington, D.C., for Federal Appellees. Marc Rotenberg, Sherwin Siy, Electronic Privacy Information Center, Washington, D.C., for Amicus Supporting Appellant.

Before KING, SHEDD, and DUNCAN, Circuit Judges.

Affirmed by published opinion. Judge DUNCAN wrote the opinion, in which Judge KING and Judge SHEDD joined.

## OPINION

DUNCAN, Circuit Judge.

Robert Peterson ("Appellant") appeals the district court's denial of his motion for a preliminary injunction to prevent the National Telecommunications and Information Administration ("NTIA") from enforcing a rule that requires public disclosure of certain personal information of any individual who registers an Internet domain on the ".us" top-level domain. For the reasons that follow, we conclude that Appellant lacks standing to prosecute his claims and, therefore, affirm the district court's order.

### I.

### A. The Internet and the Domain Name System

The Internet is an electronic network that interconnects computers worldwide, allowing users to communicate with one another. Each computer connected to the Internet is assigned a unique numerical address, otherwise known as an Internet protocol or IP address, to identify itself and facilitate the orderly flow of electronic traffic. An IP address is a string of up to twelve digits, such as "202.134.34.9." The IP address provides the basic routing information a user needs to contact and access a particular computer on the Internet, along with the website or other information stored thereon.

As the Internet grew over time and the number of websites increased dramatically, the everyday use of numerical IP addresses became unwieldy. Because of this, users began to associate letters and words with numerical IP addresses to make them easier to recall and the Internet generally easier to use. This practice led to the present ubiquity of common website names such as yahoo.com or google.com, both of which have underlying numerical IP addresses.

Each word- or number-based Internet address consists of a series of hierarchical "domains" that are separated by periods and become progressively general as one reads the address from left to right. For example, in the Internet address "msnbc.msn.com," "msnbc" represents the most specific domain in the address, followed by "msn," and then ".com;" with ".com" representing the most general domain, otherwise known as a top-level domain ("TLD"). Analogizing this Internet address to a physical street address, "msnbc" would represent the street, "msn" the city, and ".com" the state.

Because TLDs are the most general level of organization for Internet addresses, the administrators of TLDs represent the gatekeepers that individuals or businesses must satisfy in order to obtain the rights to use a specific Internet address. For example, one seeking to register the website "bluenote.com" must go to the administrator of the ".com" TLD to determine the availability of that Internet address and then, if it is available, satisfy the administrator's registration criteria in order to obtain the right to use that address.

TLDs are primarily controlled and administered by private entities. However, there is a series of country-specific TLDs, each of which is controlled by the corresponding government. The United States

controls and administers the ".us" TLD through the NTIA.

### B. Administration of the ".us" TLD

Until 2001, the NTIA restricted registration of Internet addresses, otherwise known as "domain names," on the ".us" TLD to government entities. That year, the NTIA concluded a three-year administrative process by issuing a statement of work ("SOW"), 65 Fed.Reg. 50964 (Aug. 22, 2000), setting out guidelines for private registrations on the ".us" TLD. Among other requirements, the SOW required the manager of ".us" TLD registrations to maintain and publish a public database of registrants' contact information, including the name and address of the domain name holder, as well as the name, telephone number, physical address and e-mail address for the technical and administrative contacts for the domain name (the "disclosure requirement"). 65 Fed.Reg. at 50967.

After issuing the SOW, the NTIA contracted Appellee Neustar, Inc. to manage ".us" TLD registrations. The NTIA–Neustar agreement incorporated the substantive requirements of the SOW, including the disclosure requirement. The agreement also authorized Neustar to subcontract with third-parties to sell ".us" domain registrations, but required any such contracts to incorporate all of the substantive requirements of the NTIA–Neustar agreement. Therefore, any such third-party agreements necessarily incorporated the disclosure requirement.

In 2002, Neustar entered into a third-party registration agreement with GoDaddy.com to sell ".us" domain name registrations. Despite its contractual obligations, GoDaddy.com began selling such domain names through its "Domains by Proxy" service without satisfying the disclosure requirement. These proxy registrations allowed an individual to obtain a ".us" domain name without having his identity

publicly disclosed. Instead, GoDaddy.com would appear by proxy in the database of ".us" registrants as the domain-name holder, even though the actual registrant controlled use of the IP address.

In 2005, while searching the database of ".us" domain registrants, the General Accounting Office discovered—and then contacted the NTIA regarding—a number of domain holders with inaccurate contact information. After conducting its own investigation, the NTIA wrote Neustar to address the presence of inaccurate contact information, ordering it to instruct all third-party registrars to cease offering proxy services and to bring all existing proxy registrations into compliance with the disclosure requirement. Neustar complied and directed all third-party registrars to update existing registrations by January 26, 2006 and cease proxy services by February 16, 2006.

### C. Appellant's Website

Appellant is the former registrant of the ".us" domain name, pcpcity.us, on which he operated a website, Point–Counter–Point City, dedicated to the discussion and debate of current events. Appellant chose to publish his website on the ".us" TLD because it purportedly "reinforce[d his] belief that [he was] representing American ideals by fostering political debate." J.A. 20. He registered the domain name through GoDaddy.com's proxy service, allegedly to shield knowledge of his identity and thereby to protect himself from harassment or retaliation for the viewpoints expressed on his website. Appellant, however, disclosed numerous aspects of his identity on pcpcity.us, including his name, hometown, and membership in the Illinois state bar.

After learning of the NTIA's efforts to eliminate proxy registrations on the ".us" TLD and bring existing registrations into compliance, Appellant filed suit

seeking a preliminary injunction to prevent enforcement of the disclosure requirement.[1] Appellant claimed that the disclosure requirement violated his First Amendment right to speak anonymously and that the NTIA violated the Administrative Procedures Act ("APA"), 5 U.S.C. § 500 et seq., by failing to engage in proper notice-and-comment rulemaking when enacting it. The district court denied Appellant's request for a preliminary injunction, holding that: (1) the disclosure requirement was a content-neutral time, place and manner restriction on speech that did not violate the First Amendment; (2) the NTIA's actions were exempt from notice-and-comment requirements under the "government contracts" exception to the APA, see 5 U.S.C. § 553(a)(2) (2000); and (3) Appellant lacked standing to pursue his claims because he had not suffered an injury in fact. *Peterson v. Nat'l Telecomms. & Info. Admin.*, No. 1:06–CV–96, at *5–13 (E.D.Va., Apr. 17, 2006) (unpublished). Appellant timely appealed, challenging each of the district court's rulings. We need look no further than the issue of standing to resolve this appeal.

## II.

Appellant argues that the district court erred in holding that he lacked standing based on an absence of injury in fact. He asserts standing on two separate grounds: (a) on his own behalf for injuries that he personally suffered (i.e., first-party standing), and (b) on behalf of third parties under the First Amendment doctrine of overbreadth for injuries that they may suffer (i.e., third-party standing). We consider each in turn.

### A. First–Party Standing

 Appellant first argues that he has standing in his own right because the disclosure requirement violated his First Amendment right to speak anonymously by compelling publication of his identity in connection with his domain registration. *See McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 341–47, 115 S.Ct. 1511, 131 L.Ed.2d 426 (1995) (recognizing a First Amendment right to speak anonymously). The district court rejected this argument, holding that because Appellant "explicitly posts his full name, city of residence, [bar] membership ..., and other identifying information on his website ... [he] cannot show that by complying with the [NTIA's] requirement he would suffer an injury in fact." *Peterson*, No. 1:06–CV–96 at *13. Based on our review[2] of the record, we agree.

 In order to have standing, a plaintiff must establish, inter alia, that he has suffered an injury in fact, that is, "an invasion of a legally protected interest which is concrete and particularized, as well as actual or imminent."[3] *Friends of*

---

1. Appellant also sought a temporary restraining order, but that request was rendered moot below when the disclosure requirement went into effect without a ruling from the district court on the TRO.

2. Although the order before us is a denial of a preliminary injunction, which we normally review for abuse of discretion, *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 272 (4th Cir.2002), standing is a question of law that we review de novo, *Frank Krasner Enters., Ltd. v. Montgomery County*, 401 F.3d 230, 234 (4th Cir.2005).

3. To have standing, a plaintiff must also establish that "the injury [is] fairly traceable to the challenged conduct; and [that] a favorable decision [is] likely to redress the injury." *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006). Because resolution of this appeal turns exclusively on the question of whether Appellant can demonstrate an injury in fact, we need not consider either of these additional standing requirements.

*the Earth, Inc. v. Gaston Copper Recycling Corp.,* 204 F.3d 149, 154 (4th Cir. 2000) (en banc). The plaintiff must "demonstrate a realistic danger of sustaining a direct injury as a result of" government action. *Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979). Where no such injury is present, federal courts are without constitutional authority to consider a plaintiff's claims. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 559–60, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

■■■■ The First Amendment protects anonymous speech in order to prevent the government from suppressing expression through compelled public identification. *See Buckley v. Am. Constitutional Law Found., Inc.,* 525 U.S. 182, 197–201, 119 S.Ct. 636, 142 L.Ed.2d 599 (1999); *McIntyre,* 514 U.S. at 341–44, 115 S.Ct. 1511. Forced public revelation discourages proponents of controversial viewpoints from speaking by exposing them to harassment or retaliation for the content of their speech. *Buckley,* 525 U.S. at 197–201, 119 S.Ct. 636; *McIntyre,* 514 U.S. at 341–44, 115 S.Ct. 1511. Speech is chilled when an individual whose speech relies on anonymity is forced to reveal his identity as a precondition to expression. *See Buckley,* 525 U.S. at 199, 119 S.Ct. 636 ("The injury to speech is heightened for the petition circulator because the badge requirement compels personal name identification at the precise moment when the circulator's interest in anonymity is greatest."). In other words, the First Amendment protects anonymity where it serves as a catalyst for speech.

■■■■ Appellant's online postings are wholly inconsistent with his invocation of this right because they demonstrate that his expression did not rely on his ability to remain anonymous. On pcpcity.us, Appellant publicly identified himself as holding a number of "elected" offices in his virtual Point–Counter–Point City, promoted works published under his own name, disclosed his state bar membership, identified his hometown, and linked to his former website that carried debates published under his own name. J.A. 748, 756–58. This information was disclosed prior to—and independent of—any action on the part of the NTIA. In addition, Appellant continued posting personally identifying information *after* filing this lawsuit, which is purportedly based on a desire to maintain his anonymity. *See* J.A. 744 (posting information about this lawsuit). The remaining information that the NTIA requires ".us" domain registrants to disclose is easily obtained from that which Appellant voluntarily revealed. *See* J.A. 740–41.

Based on these voluntary revelations, the concerns underlying the right to anonymous speech simply are not present here. The disclosure requirement exposed Appellant to no danger of harassment or retaliation to which he had not already subjected himself. Because anonymity did not serve as a catalyst for Appellant's expression, the NTIA's disclosure requirement was no threat to his speech activities and did not cause him injury.[4] We, therefore, conclude that Appellant cannot establish an injury in fact for purposes of standing.

Nevertheless, Appellant argues that the First Amendment encompasses a right to partial anonymity that allowed him to protect certain aspects of his identity from disclosure even after voluntarily revealing others. Appellant finds support for this argument in *McIntyre,* 514 U.S. at 342–58, 115 S.Ct. 1511, and *Watchtower Bible & Tract Society of New York, Inc. v. Village*

---

4. We do not reach the question of whether the disclosure requirement might, under other circumstances, cause injury to an individual's right to speak anonymously.

*of Stratton,* 536 U.S. 150, 166–69, 122 S.Ct. 2080, 153 L.Ed.2d 205 (2002), in which the Supreme Court struck down laws as restraints on the right to speak anonymously even though the petitioners, or those whose rights they represented, voluntarily revealed their identities. Neither case supports Appellant's position here, howeverer.

The Supreme Court's decision in *McIntyre* does not bear the weight Appellant accords it. That the petitioner in *McIntyre* voluntarily revealed her identity to a limited extent played no role in the Court's analysis. *See* 514 U.S. at 343–58, 115 S.Ct. 1511. The petitioner was fined pursuant to a state law that required campaign materials to identify the individuals responsible for producing them. *Id.* at 337–38, 115 S.Ct. 1511. Although the petitioner did distribute anonymous materials, some of the materials bore her name. *Id.* at 337, 115 S.Ct. 1511. The Supreme Court held that the state law was an unconstitutional restraint on her right to speak anonymously without according any significance to the limited disclosure of her identity. *Id.* at 357, 115 S.Ct. 1511.

We likewise find Appellant's invocation of *Watchtower Bible* unavailing. In *Watchtower Bible,* the petitioners challenged a local ordinance that required door-to-door canvassers to obtain permits revealing their identities and then present them on request as they circulated throughout the community. 536 U.S. at 153–56, 122 S.Ct. 2080. The Court struck down this requirement as an unconstitutional restraint on the right to speak anonymously. *Id.* at 164–69, 122 S.Ct. 2080. In doing so, the Court held that the loss of anonymity inherent in the face-to-face interactions of door-to-door canvassers did not impede enforcement of their right to anonymity. *Id.* at 166–67, 122 S.Ct. 2080. In other words, an individual may protect his legal identity (i.e., name, address, etc.)

from public disclosure, even though he voluntarily reveals his physical identity by speaking in public. *See id.*

While *Watchtower Bible* suggests the existence of a right to partial anonymity, the holding is actually far narrower than Appellant's extrapolation. By distinguishing a person's physical appearance from his or her legal identity (name, address, etc.), *Watchtower Bible* merely establishes that individuals may speak in public without otherwise forfeiting their right to conceal the personal information necessary to locate and harm them in retaliation for engaging in unpopular speech. *Id.* at 166–67, 122 S.Ct. 2080. Here, Appellant has already disclosed precisely the type of information that identifies how to locate him both professionally and geographically. Therefore, we find no merit in his argument that *Watchtower Bible* embraces a right to partial anonymity sufficient to overcome our conclusion that he has suffered no injury.

Ultimately, we conclude that Appellant lacks standing because he voluntarily revealed his identity and, therefore, suffered no harm from any compelled identification under the disclosure requirement.

### B. Third–Party Standing

▮▮▮▮ Appellant next argues that he has standing to raise a First Amendment overbreadth challenge on behalf of third-parties not involved in this litigation. The Supreme Court has relaxed standing requirements for overbreadth challenges to allow litigants "to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Broadrick v. Oklahoma,* 413 U.S. 601, 612, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). "This

doctrine, however, only assists plaintiffs who have suffered some injury from application of the contested provision to begin with." *Gilles v. Torgersen,* 71 F.3d 497, 501 (4th Cir.1995). In other words, a party asserting overbreadth standing must still demonstrate "a distinct and palpable injury." *Burke v. City of Charleston,* 139 F.3d 401, 405 n. 2 (4th Cir.1998). This requirement is fatal to Appellant's argument here because, as discussed above, the disclosure requirement caused him no injury. Without such an injury, Appellant lacks standing to bring an overbreadth challenge.

### III.

Based on the foregoing, the district court's order denying Appellant Robert Peterson's motion for a preliminary injunction is

*AFFIRMED.*